# Montgomery and West Point Railroad Co. *v.* Moore.

*Action against Common Carrier for Damage to Goods.*

1. *Burden of proof as to damage or injury to goods.* — When goods are delivered by a common carrier in a damaged or injured condition, the *onus* is on him to show that they were received by him in that condition, or that the injury occurred, without fault on his part, by the act of God or a public enemy.

2. *Liability of carriers owning different parts of continuous line or route of transportation.* — When parts of a continuous line or route of transportation are owned by different carriers, between whom no connection is shown to exist, each carrier is liable, in the absence of a special contract, only for losses and injuries occurring on his own particular portion of the route.

3. *Charge to jury excluding part of evidence.* — A charge which, in effect, excludes from the consideration of the jury any evidence, however weak, tending to prove a fact material to the party excepting, is erroneous.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Royster & Moore, partners doing business as merchants in the city of Montgomery, against the appellant as a common carrier, to recover damages for injuries to two boxes of shoes, which were shipped from Philadelphia, *per* steamship *Georgia*, consigned to the plaintiffs at Montgomery.   The action was commenced on the 6th December, 1859, and, on the dissolution of the plaintiffs' firm by the death of Royster, was prosecuted to trial and judgment in the name of L. T. Moore as surviving partner.   The only plea was the general issue, "with leave to give any special matter in evidence;" and on this plea issue was joined, and a trial by jury had, at the July term, 1872.   On the trial, as the bill of exceptions states, the plaintiff proved and read in evidence

the bill of lading for the goods, which was dated the 15th March, 1859, and recited that the goods were shipped on the steamship *Georgia*, at Philadelphia, in good condition, consigned to Royster & Moore at Montgomery, " to be delivered in like good condition at the port of Savannah, the damages of the sea excepted ; " and proved " that said goods were in good order when shipped, and that when they were delivered to the plaintiffs by the defendant as a common carrier, in the spring of 1859, they were in bad order, being damaged by fire and water ; that the trunks containing the goods were damaged from fire and steam, and indicated by their appearance that they had been exposed to intense heat by fire or steam, and were thereby greatly injured.　There was evidence tending to show that, at that time, there was no other business connection between the defendant and the said steamship, except that freight shipped from Philadelphia to Montgomery would pass over defendant's road from West Point, Georgia, to Montgomery.　It was in proof, also, that goods transported by defendant over its road were not carried on an engine, nor exposed to fire or steam in the course of transportation over said road. There was proof, outside of the bill of lading, that the trunks were in good order and condition when delivered to the steamship at Philadelphia ; that the goods were packed in the trunks by the shippers, and were in good order and condition when packed and delivered to the ship ; that when delivered by defendant, in Montgomery, plaintiffs at once called defendant's attention to the trunks and goods, and demanded payment for the damage done, which was refused ; and that the damages to the goods were assessed at the time, by persons selected by plaintiffs with the consent of defendant."

" This being all the evidence, the court charged the jury as follows : ' If you find, from the evidence, that the trunks and goods mentioned in the complaint were shipped from Philadelphia to the plaintiffs, who purchased them there, and were in good order and condition when shipped on the *Georgia* to the port of Savannah, directed and consigned to the plaintiffs at Montgomery ; and if you further find that the trunks were brought from West Point, Georgia, to Montgomery, by the defendant as a common carrier, on their railway, and that the trunks and goods were in a damaged condition when delivered by defendant to plaintiffs, — then your verdict will be for the plaintiff, for the amount you find the trunks and goods were damaged, with interest from the time of the demand.' "

The defendant excepted to this charge, and requested the following charges, which were in writing : 1. " If the jury are satisfied, by the evidence, that there was no connection between the railroad company and the steamship, there is no

liability on the railroad company for any injury sustained by the goods on the steamship." 2. " The plaintiff, in order to make out his case for injury to the goods, must show that they were in good order when received by the defendant, and were injured when delivered by defendant to plaintiffs." 3. " If the jury believe, from the evidence, that the goods were damaged by the steamship, and not by the defendant, then the defendant is not liable." The court refused each of these charges, and the defendant excepted to their refusal..

The charge given by the court, and the refusal of the several charges asked, are now assigned as error.

SEMPLE & COOKE, for appellants.

W. P. CHILTON, *contra.*

BRICKELL, J. — When a common carrier delivers goods in a damaged or injured condition, and it does not appear he received them in such condition, the law casts upon him the burden of proving that they were in that condition when he received them, or that the injury occurred by the act of God, or of a public enemy, without fault on his part. Edwards on Bailments, 565–70. The plaintiff having proved that the defendant delivered him the goods damaged, and the cause of the injury appearing to have been the exposure of the goods to fire and steam, the defendant gave evidence tending to show, that goods transported by it were not subjected to injury from such cause. The goods were shipped at Philadelphia, on a steamship bound for Savannah; and, in the course of transportation to Montgomery, their point of destination, passed over the road of defendant. From the bill of exceptions it does not appear that there was any such connection between the defendant and the steamships, as would render the defendant liable for an injury to the goods occurring on board the ship, nor, indeed, that there was any such connection between the defendant and any other carrier, or any special contract, whereby the defendant would be liable for a loss or injury not occurring on its own road, or while the goods were in its possession. The general rule prevailing in this country is, that in the absence of a special contract, or of some relation between carriers having control of different parts of a line or route of transportation, each carrier is liable only for a loss or injury on his particular line or route. *Ellsworth* v. *Tartt*, 26 Ala. 733; *Darling* v. *Worcester R. R. Co.* 11 Allen, 295; Redfield on Carriers, chap. 14. The charge given by the court was erroneous, in requiring the jury to find a verdict against the defendant, though they may, from the evidence, have believed

that the injury to the goods was produced before they came to the possession of the defendant.   The evidence that such was the fact may have been weak, and may or may not, in the judgment of the jury, have repelled the presumption the law raised against the defendant, from a delivery of the goods in a damaged condition.   It was the province of the jury to determine its strength, and the court could not withdraw it from their consideration.

The first and third charges requested by the defendant should have been given.   They asserted correct legal propositions, applicable to the facts before the jury.   The second charge requested was properly refused.   The plaintiff made a *primâ facie* case against the defendant, when he proved that the goods were delivered by the defendant in a damaged condition.   The *onus* of proving that the goods were in such condition when they were received, devolved on the defendant.

For the errors pointed out, the judgment is reversed, and the cause remanded.