St. L., I. M. & S. Ry. v. Lesser.

2. Power of legislature to limit term.

---

## St. L., I. M. & S. Ry. v. Lesser.

1. RAILROADS: *Liabilities as carriers of live stock.*
 Carriers of live stock are liable as common carriers and as insurers to the same extent as carriers of merchandise, except as to injuries caused by the animals to themselves or to each other; losses that are caused by their inherent vices and propensities.

2. SAME: *Contracts for exemption from liability, etc.*
 A common carrier cannot lawfully stipulate for exemption from responsibility for the negligence of himself or his servants, or the insufficiency of his cars for the transportation of the freight deposited in them.

3. SAME: *Damages measured by special contract.*
 When the shipper of live stock, in consideration of reduced rates, contracts with the carrier that in case of a total loss of any of the stock,

the valuation of any animal should not exceed a specified sum, then in case of a partial injury the damages will be the proportion of that sum the animal was lessened in value by reason of the injury.

4. SAME: *Exemption from liability.* *Onus of proof.*

Whenever a common carrier seeks to avoid liability for losses on account of a contract limiting his liability, he must prove, as a general rule, not only that a limited contract was made, but also that the loss in question arose from a cause excepted in the contract.

APPEAL from *Lee* Circuit Court.

Hon. M. T. SANDERS, Circuit Judge.

*Dodge & Johnson,* for appellant.

*First*—The verdict was contrary to the evidence. There was *no* evidence showing *any* negligence whatever on part of appellant. The defendant was treated as an *insurer*, when by the contract his liability was limited to that of a *forwarder* or *private carrier.*

*Second*—The verdict was contrary to the instructions of the court.

*Third*—The court erred in refusing the first instruction for appellant. Plaintiff took upon himself the duty of seeing that the car was safe and secure, and defendant could not be held liable for any want of safeness or soundness of the car. The duty imposed was not an unreasonable one. The contract speaks for itself, and by it the jury were to be governed in arriving at their verdict.

*Fourth*—The court erred in refusing defendant's fifth instruction, and in modifying it. *8 Pac. Rep., 465.* Common carriers may limit their liability as such to a certain extent, if the shipper understand and assent thereto. They may not exempt themselves from liability for loss occasioned by their own negligence or misconduct, but they may stipulate for exemption from the extreme liability

imposed by the common law, if such stipulation is just and reasonable, and does not contravene any law or sound public policy. *63 Mo., 314; 65 ib., 629; 21 Wall., 264; 76 Mo., 514; 16 Am. & E. R. Cases, 259 and note; 100 Mass., 505; 39 Ark., 149, 523.* If negligence of the carrier is relied on to defeat such a stipulation, the burden of proving it is on the plaintiff.

BATTLE, J. The defendant, St. Louis, Iron Mountain & Southern Railway Company, transported a car-load of horses and mules for plaintiff, Julius Lesser, under a special contract, over its railway, from St. Louis to Marianna, Ark. One of the horses was badly injured in the course of transportation. Plaintiff sued the defendant in the Lee circuit court for the damages suffered by reason of the injury.

So much of the contract as affects the matters in controversy is in the words and figures following:

"Live Stock Contract executed at St. Louis station, September 13, 1884.

"This agreement, made between the Missouri Pacific Railway Company, of the first part, and Julius Lesser, of the second part, witnesseth, that whereas the Missouri Pacific Railway Company transports live stock as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties hereto; now, therefore, for the considerations and the mutual covenants and conditions herein contained, the said first party will transport for the said second party live stock, and the persons in charge thereof, as hereinafter provided, from St. Louis station to Marianna, Ark., station, at the rate of tariff per car, the same being a *special rate* lower than the regular rates, or a rate mutually agreed upon between the parties hereto, for and in consideration of which

St. L., I. M. & S. Ry. v. Lesser.

the said second party hereunto covenants and agrees as follows:

" *First*—That he hereby releases the party of the first part from the *liability of a common carrier* in the transportation of said stock, and agrees that such liability shall be only that of a *mere forwarder* or *private carrier* for hire; and also hereby agrees to waive and release, and does hereby release said first party from any and all liability for or on account of any delay in shipping said stock after the delivery thereof to its agent, and from any delay in receiving the same after being tendered to its agent.

" *Second*—The said second party hereby agrees to accept, and does accept, for the transportation of his said stock, the cars tendered him by the said first party, and agrees that he will see that they are in good and safe condition, and that they are securely fastened so as to prevent the escape of said stock therefrom; and that he will not hold said first party responsible for any loss or damage which may result from neglect or failure on his part, or of his agents or employes to do so; and also agrees to assume, and does hereby assume, all risks of injury or loss to his stock because of any defect in said cars, of their being wild, unruly, weak, or maiming each other or themselves, or of heat, suffocation or other results of being crowded in the cars, or of being injured or destroyed by fire on any account whatever, and especially because of burning hay, straw or other materials used for bedding the cars or feeding the stock, or for any other purpose.

" *Seventh*—The said second party further agrees, for the considerations aforesaid, that *in case of total loss* of any of his said stock from any cause for which the said *first party will be liable to pay* for the same, the *actual cash value at the time and place of shipment, but in no case to exceed $100 per head*, shall be taken and deemed as a full compensation

therefor; *and in case of injury or partial loss, the amount or damages claimed shall not exceed the same proportion.*" * *

There was no evidence introduced in the trial of this action to show how the horse was injured, except that plaintiff testified that the agent of the defendant told him that when the mules and horses were first put into a car at St. Louis, they were put into a car which was too small and was full of nails. The wound received by the horse was made, as shown by evidence, after he was received by defendant for shipment, and before his arrival at Marianna. The horse was worth, before he was wounded, $150, and after $70.

*First*—The defendant asked the court, among other things, to instruct the jury as follows:

1st. "If the jury find from the evidence that the plaintiff entered into a special con███th defendant, and that one of the conditions of sai███ontract was, that the plaintiff should himself see that the car in which the horse in question was, was in good and safe condition, he cannot recover for any injury accruing from a bad or unsafe car, provided plaintiff had an opportunity to inspect said car." The court refused to give the instruction and defendant excepted.

1. Carriers of live stock: Liability. Carriers of live stock are liable as common carriers, and as insurers to the same extent as when engaged in the transportation of general merchandise, except as to injuries caused by the animals themselves, and to each other; losses that are caused by their inherent vices and propensities.

2. Contracts for exemption from liability. In *Railroad Company v. Lockwood, 17 Wall., 357,* Mr. Justice Bradley, in a very able opinion, after discussing at length the right and extent to which common carriers can limit their liabilities, by special contract, announced the

conclusions, to which, among others, the court came to, as follows:

" *First*—That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law.

" *Second*—That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."

In *Railroad Company v. Pratt, 22 Wall., 124,* the court held, that " if a common carrier by rail is negligent in furnishing cars, and so furnish cars unsuitable for the case, even though they be cars for cattle, which cars the owner himself sees, and which cattle the owner himself attends, the carrier is not relieved from responsibility, even though there has bereement that he shall not be liable."

In *Welsh tsburg, Fort Wayne and Chicago Railroad Company, 10 Ohio St., 65,* the plaintiff entered into a contract with the defendant for the transportation by the defendant of certain car loads of live cattle, in the words and figures following:

" The undersigned hereby contracts, agrees and binds himself, for himself and the owner of the cattle shipped in Nos. 233, 231, 1,000, 207, 14, on the Pittsburg, Fort Wayne & Chicago Railroad, at $39 per car, on the 27th day of September, 1856, to be transported to Allegheny, Pa., by the Pittsburg, Fort Wayne & Chicago Railroad Company, in consideration of the said company agreeing to transport the said cars at $39 per car, at a rate by the car load, less than the maximum rate charged on pound freight for the full capacity of the car (18,000 pounds), to load, unload, feed, water and attend to the stock himself, and having examined the cars, to assume all the risks of transportation, both as to the live stock, and as to the individuals who

may travel with such stock, to attend to it; being all risk arising from any defect in the body of the car, imperfect doors and fastenings, overloading, or from vicious and restive animals, delays, or from any other cause or thing not resulting from defective tracks, wheels or axles.

"Signed at Bucyrus this 27th day of September, 1856. (Signed), "W. S. WELSH."

Before signing the contract plaintiff examined the cars. He found the doors to the same imperfect and the cars insecure. Notwithstanding this he loaded the cattle and fastened the doors as well as he was able with the means furnished him by defendant for that purpose. In running twelve miles, with ordinary and proper care, six of the cattle escaped or were lost, because of the defective doors dropping out. Another door, thus defective, dropped out soon afterward and six more cattle were lost. ." These defects," says the court, " in the doors and their fastenings, were well known to both the parties when the cattle were loaded, and the plaintiff expressly agreed to assume the risk arising therefrom." The court held, that " a common carrier of live stock cannot, by special contract, procure exemption from responsibility for losses arising from its own neglect of the duties incident to such employment;" that in furnishing defective and unsafe cars, the defendant was guilty of negligence, and was liable for the damage resulting from such cars, notwithstanding his express contract to the contrary; and that plaintiff was entitled to judgment against defendant for such damages.

In *Rhodes v. Louisville & Nashville Railroad Co., 9 Bush, 688,* the defendant undertook the transportation of cattle under a special agreement, by which the plaintiff, the owner of the cattle, assumed all injury, loss or damages which might be occasioned in certain contingencies, including the escaping of the cattle and possible injury to them by

fright or their own viciousness, as well as any other injury which might happen to them incidental to railroad transportation, not caused by the fraud or gross negligence of the railroad company. The court held that, "while this special contract devolved on the owner the personal care of the cattle, with the duties and risks connected with it, including the risk of their escaping or being injured in consequence of their own restiveness or viciousness, it did not exonerate the company from responsibility for damages resulting from a failure to provide a suitable and safe car for the carriage of the cattle."

The instruction was properly refused.

*Second*—The defendant asked the court to instruct the jury as follows:

3. Damages measured by special contract.

" 5th. If the jury find from the evidence that the plaintiff entered into a contract with the defendant that even in case of loss or damage occurring through the defendant's 'gross negligence,' plaintiff bound himself to, place no higher value upon any single animal shipped than $100; then for a partial loss the measure of damages is, what proportion of $100 said horse was lessened in value by reason of the injury."

But the court, against the objection of the defendant, gave the jury the instruction with the addition of the following words: " Provided the jury find the valuation was agreed on in consideration of special rates."

There was no evidence to disprove the statements made in the contract that the rates agreed to be paid for the transportation of the stock were less than the regular rates. "It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that as the rate of freight expressed is stated to be on the condition that the defendant assumes liability to the extent of the

agreed valuation named, the rate of freight is graduated by the valuation." *Hart v. Pennsylvania Railroad Co., 112 U. S., 337.*

4. Burden of proof. The defendant was entitled to the instruction as asked, and it was error to refuse it. *Hart v. Penn. R. Co., supra.*

*Third*—Whenever a common carrier seeks to avoid a liability for losses on account of a contract limiting his liability, the burden of proof, as a general rule, is upon him not only to show that a limited contract has been made, but also that the loss in question arose from a cause excepted in the contract. And this fact must be established with reasonable certainty and not rest upon conjecture or possibility. But it is unnecessary to apply that rule in this case. We think the evidence was sufficient to authorize the jury to find that the injury in question was caused by the negligence of defendant's employes.

The jury returned a verdict in favor of plaintiff for $80 damages. They evidently took the difference between the value of the horse before and after he was injured as the measure of damages. According to this standard, the verdict should have been for $53.33, the proportion of $100 the horse was lessened in value by the injury.

If appellee shall enter a remittitur here of $26.67, the difference between $80 and $53.33, within the next fifteen days, according to the rules of this court, the judgment of the court below will be affirmed; otherwise it will be reversed, and this cause will be remanded with instructions to the court below to grant defendant a new trial.