## RAILWAY CO. *v.* SPANN.

### Opinion delivered December 24, 1892.

1. *Carriers—Limitation of liability.*

    Limitations upon the common law liability of a carrier, contained in a bill of lading for the shipment of live stock, are unreasonable and void, notwithstanding it is recited therein that the limitations were agreed to by the shipper in consideration of a reduced rate, if the carrier's rules, printed upon the bill of lading, would not have permitted the live stock to be shipped unless the shipper accepted the bill of lading with its limitations.

2. *Bill of lading—Rights of connecting carrier.*

    Where a bill of lading furnishes upon its face evidence of the invalidity of clauses limiting the carrier's liability, a connecting carrier can claim no more under it than the carrier who issued it.

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

A. J. Spann brought suit against the St. Louis, Iron Mountain & Southern Railway Company. The complaint alleged in substance that, on May 20, 1890, the plaintiff, at Texarkana, Ark., delivered two carloads of horses and colts to defendant for transportation to Cairo, Ill., there to be delivered to the connecting carrier for transportation to Carbondale, Ill. That defendant, for a consideration that was paid, received said stock, and agreed safely to carry and deliver the same at Cairo, Ill.; that, disregarding its duty, it did not transport said stock in a safe and careful, manner, and failed and neglected for more than twenty-eight hours, while in transit, to permit plaintiff to unload, rest, water and feed his stock, thereby causing said stock to become ill and feverish, and to bruise and injure each other, so that four animals died and all of the remaining ones were greatly injured; that the amount that the dead animals were

worth was $20 each, and the remaining sixty-five head were damaged to the extent of $12, all to plaintiff's damage in the sum of $1500.

The answer, after denying specifically each allegation of negligence and want of care, as charged in the complaint, alleged the facts to be that, on May 17, 1890, at San Antonio, Texas, plaintiff shipped over the International & Great Northern Railroad two cars containing seventy head of horses and colts, consigned to himself at Carbondale, Ill.; that, at the time of the shipment, plaintiff made a written contract with the International & Great Northern Railroad for the shipment of said stock from San Antonio, Texas, through to Cairo, Ill., upon a through special contract and upon other considerations whereby said railway, upon certain conditions, stipulations and restrictions in said contract contained, agreed to transport said stock to Cairo, Ill. That the International & Great Northern Railroad hauled plaintiff's stock to Texarkana, Ark., and there delivered them to the defendant, its connecting carrier, on May 20, 1890; that defendant received said stock from the International & Great Northern Railway under the terms, restrictions and limitations contained in said written contract, and thereupon safely transported them, without negligence or want of care of any kind, to Cairo, Ill.; that on the route said stock were unloaded, watered and fed at all reasonable times; that they were handled carefully, and, on arrival at Cairo, Ill., were safely delivered to plaintiff in good condition, in accordance with the terms of the contract.

For a second defense, the railway company pleaded the limitations and exemptions contained in the contract as made in clauses 2, 3 and 4.

The second clause exempted the carrier from all liability arising from loss or injuries occasioned by the wild, unruly, weak or vicious acts of said stock in wounding

each other or themselves, or by reason of heat, suffocation or other results, or being crowded in cars; and if any of said stock should be injured while in transit, it was agreed that the presumption should be that it was the fault of the plaintiff or his agents in charge, for which the carrier should in no respect be liable.

The third clause exempted the carrier from all liability for any loss or injuries occasioned while plaintiff was unloading, watering, feeding or reloading his stock.

The fourth clause exempted the carrier from all liability for loss by reason of any delay from any source except negligence on the carrier's part, said negligence to be proved by plaintiff and not to be assumed.

For a third defense, defendant pleaded the eighth clause of the contract of shipment, that, for any loss suffered by reason of injury to said stock caused by defendant's negligence, the measure of damage should be the actual cash value of the stock at the time and the place of shipment, in no case to exceed $100 per head; and, for injury or partial loss, the measure of damages should be in the same proportion.

These were the issues upon which this case was tried.

A. J. Spann, plaintiff, stated that he was a hotel keeper; that, on May 15, 1890, he shipped seventy head of horses and colts over the International & Great Northern Railway, consigned to himself at Carbondale, Ill. He traveled and was with his stock all the way through. On the 19th or 20th of May, they arrived at Texarkana, Ark., and were delivered to defendant railway as connecting carrier. At Texarkana, the stock were unloaded, watered and fed, and were in good condition on arrival there. The train left Texarkana May 20, and ran to Poplar Bluff, Mo., occupying twenty-nine and one-half hours, without the stock being unloaded, watered and fed. At Hoxie, witness wanted to stop, water and feed, but the

trainmen declined, saying they would get to Poplar Bluff on time. On arrival at Poplar Bluff, there was one dead colt and one mare badly injured, in the car. Witness did not know how the injury occurred or what occasioned it. There were bruises on their bodies, but he did not know what occasioned it. After being well watered, fed and rested, they were reloaded and carried to Cairo, Ill., and there delivered to the Illinois Central Railroad. No damage was done to the stock between Poplar Bluff and Cairo, Ill., and witness claimed no damages by reason of anything done between these points.

On arrival at Carbondale, the stock were gaunt, thin and badly damaged by reason of having been kept on cars so long between Texarkana and Poplar Bluff, without having been watered and fed. The weather was hot ; many were down and trampled upon on arrival at Poplar Bluff ; the hair was worn off and the animals were bruised. The mares were worth $21 per head at San Antonio, and the colts $17. Witness paid $1000 for the stock on the market at San Antonio. At Carbondale, Ill., if they had not been damaged, in witness' opinion, the mares would have been worth from $40 to $50, and the colts from $12 to $15, but witness could not get the market price on account of their damaged condition, and they were not worth more than $12 to $15 per head. The stock reached carbondale on May 23, 1890, and on May 24 he served notice on the Illinois Central Railroad, claiming damages for three head of horses, dead, valued at $100 ; ten head crippled, damaged $150, and fifty seven head damaged $250, for failure to water and feed ; total damages claimed in his notice, $500. Witness pastured his stock at Carbondale for three or four weeks on account of their condition. During this time three or four died and three or four were so badly injured that he sold them at $2.50 per head.

This was all the testimony on plaintiff's behalf.

There was testimony on behalf of defendant which tended to establish that the cattle were not damaged to the extent that plaintiff testified.

The bill of lading which was issued to the plaintiff contained the following among other regulations for the shipment of live stock, viz: "No station agent of this railroad has any power or authority to bind this railroad in regard to the shipment of live stock, except by written contract, in the following form: neither has such agent any power or authority to contract to have cars at his or any other station for the shipment of live stock at any given or named date or agree to furnish under any circumstances any particular class or kind of cars." It contained provisions of which those material in this case are as follows:

"*This Agreement*, Made between the International & Great Northern Railroad, of the first part, and A. J. Spann, of the second part; *Witnesseth*, That, whereas, the International & Great Northern Railroad transports live stock as per above rules and regulations, all of which are hereby made a part of this contract by mutual agreement between the parties hereto. Now, therefore, for the considerations and the mutual covenants and conditions herein contained, the said first party will transport for the said second party the live stock described below, and the parties in charge thereof, as hereinafter provided, viz:

"Two cars, said to contain seventy head of horses and colts, from San Antonio Station to Cairo, Ill., Station, consigned to A. J. Spann, Carbondale, Ill., at the rate of —— per ——, the same being a special rate, lower than the regular rates, or a rate mutually agreed upon between the parties hereto, for and in consideration of which the said second party hereby covenants and agrees as follows:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Second.   That said second party hereby agrees to assume, and does hereby assume, all risks of injury or loss to his stock, because of any defect in said cars, of their being wild, unruly, weak, or maiming each other or themselves, or of heat, suffocation or other results of being crowded in the cars, or of being injured or destroyed by fire on any account whatever, or for any other purpose.   And if any of said stock shall sustain injury or damage while in transit, the presumption shall be that the same resulted from overloading, or from the neglect or inattention of the party of the second part, his or their employees accompanying said stock, for which the party of the first part shall in no respect be liable.

"Third.   That, at his own risk and expense, he is to take care of, feed, water and attend to said stock while the same is being loaded, transported, unloaded and reloaded, and to load and unload and reload the same at feeding and transfer points, and wherever the same may be unloaded and reloaded for any purpose whatever, and hereby covenants and agrees to hold said first party harmless on account of any or all losses or damage to his said stock while being so in his charge, and so cared for and attended to by him or his agents or employees as aforesaid.

"Fourth.   That he, the said second party, for the consideration aforesaid, hereby assumes and releases said first party from risk of injury or loss which may be sustained by reason of any delay in the transportation of said stock, caused by overloading cars, fright of animals, or crowding one upon another, or any and all other causes, except the negligence of the said first party ; said negligence not to be assumed, but to be proved by the said party of the second part.

*        *        *        *        *        *

"Eighth.   The said second party further agrees that, in case of total loss of any of his said stock, the

actual cash value at the time and place of shipment, but in no case to exceed one hundred dollars per head, shall be taken and deemed as a full compensation therefor, and in case of injury or partial loss, the amount of damage claimed shall not exceed the same proportion.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Twelfth. In consideration of the rates herein named, and the aforesaid covenants, the shipper hereby releases and does waive and bar any and all cause of action for damages that has accrued to him by any written or verbal contract prior to the execution hereof.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Fifteenth. The evidence that the said second party, after fully understanding and accepting all the terms, covenants and conditions of this contract, including the printed rules and regulations at its head and on the back thereof, and that they all constitute a part hereof, fully assents to each and all of the same, is his signature hereto.

Y. W. GESIMORN,<br>
<em>Agent for I. & G. N. Railroad.</em><br>
A. J. SPANN, <em>Shipper.</em>"

The court instructed the jury upon the theory that the limitations in the bill of lading were void unless plaintiff obtained shipment of his horses at a reduced rate, as set out in the bill of lading.

The jury returned a verdict for plaintiff for $240. Defendant has appealed, and insists that the trial court erred in its instructions and that the verdict was excessive.

*Dodge & Johnson* for appellant.

1. The verdict is not sustained by the evidence, but is contrary to the evidence. The case is exactly like that in 50 Ark. 413. The rate was a *special rate*, lower than the regular rate and mutually agreed on by the par-

ties. Part of the stock were injured before defendant received them. 42 Ark. 435. Under the Federal statute carriers may keep stock upon cars twenty-eight hours without unloading, feeding, etc., but no longer. The proof shows that the stock was on the cars only twenty-seven hours and ten minutes. Rev. St. U. S. sec. 4386.

2. The verdict is excessive.

3. The court erred in refusing defendant's prayers for instructions and in modifying them. 50 Ark. 413. A through bill of lading and a through rate less than regular rate were a valuable consideration for the clauses limiting liability. 110 U. S. 667, 680; 25 Md. 72; 41 Fed. Rep. 562; 54 Ark. 403; 47 Me. 590; 4 P. F. Smith, 82; 18 *id.* 277; 22 Wall. 601; 16 *id.* 324; 42 Vt. 568; 45 N. Y. 530; 104 Mass. 135; 49 Vt. 265; 4 McCrary, 405; 19 Wis. 137; 54 N. Y. 502; 7 H. L. Cases, 213, 214; 52 Ill. 129; 3 Fed. Rep. 768; 13 Gray, 481; 115 Mass. 304; 49 Ark. 354; 61 Penn. St. 86; 4 Am. L. Reg. 234. But the parties being left free to make their own contract, and having agreed that in consideration of the payment of a certain price by the one, upon stipulated terms as to responsibility, it shall be performed by the other, neither party can allege that as to him there was no contract. 48 N. Y. 506; 98 Mass. 230; 15 Minn. 270; 32 Ark. 670; 39 *id.* 149; *ib.* 359; 40 Ark. 375; 44 *id.* 209; 46 *id.* 243; 47 *id.* 103.

4. After the written contract was proved, it is *prima facie* true, and the burden devolves on plaintiff to show that it was false. 32 Ark. 607; 39 *id.* 529; 52 *id.* 30; 46 *id.* 243; 50 *id.* 412. The question of what was a reasonable time to keep stock on cars was one of law, not of fact for the jury, and it was error to leave this question to the jury. 52 Ark. 410.

*Scott & Jones* for appellee.

The proof shows that there was but *one rate* for shipping horses, and that plaintiff had no option. He

had to take the contract with the fifteen clauses limiting the carrier's liability, or not ship—he had no option. The case differs materially from 50 Ark. 413. In this no freight rate was incorporated in the contract; it was blank, because there was but one rate, and beyond defendant's line the agent did not know what the rate was. The testimony shows Spann paid the regular rates. There was then no consideration for the limitation clauses. 4 S. W. Rep. 689.

2. The proof establishes negligence. Rev. St. U. S. sec. 4386; 15 S. W. Rep. 692; 12 S. E. Rep. 363. The receipts signed by Spann, may be shown to have been untrue. 15 S. W. Rep. 692.

3. The damages are not excessive.

4. The burden is on a carrier to establish facts which excuse him from liability. 44 Ia. 424; 46 Ark. 243.

5. If the contracts are valid, a carrier cannot stipulate for exemption from responsibility for negligence of itself or servants, etc. 46 Ark. 237.

HEMINGWAY, J. This case presents the question determined in *Railway Co.* v. *Cravens, ante,* p. 112.

The plaintiff did not in this case, as in that, introduce proof to show that he had no option in accepting the bill of lading, or that he accepted it because he could not procure a shipment of his horses without doing so; but the facts above appear by the recitals of the bill of lading upon which the defendant relied, and the defense therefore failed. The bill of lading was upon a printed form, and contained fifteen sections limiting the defendant's common law liability. It provided that the company's rules and regulations printed at its head should constitute a part of it; and the first of said rules is as follows: "No station agent of this railroad has any power or authority to bind this railroad in regard to the shipment of live stock except by written contract in the

1. Right of carrier to limit liability.

following form "—following which is the contract with the fifteen limiting clauses. It thus appears that the railroad would not receive or carry the stock unless the shipper accepted the bill of lading relied upon; as ruled in the Cravens case, such a contract is not deemed fair to the shipper or just and reasonable in law, and is invalid.

2. Right of connecting carrier under bill of lading. As the bill of lading furnished the evidence of its invalidity, the defendant, though an intermediate carrier, could claim no more under it than the carrier that issued it.

All objections to the instructions relate to this matter; and, as it furnished no ground of defense, it is unnecessary to consider them.

It is further argued that the verdict is excessive, and we are by no means satisfied that we should have rendered one so large; but if plaintiff's testimony was true, the amount recovered does not exceed his loss; and whether his testimony was true or was overborne by the weight of conflicting testimony, was a question for the jury, not for us.    Affirm.