Mr. Justice Wood dissents.

---

## St. Louis, Iron Mountain & Southern. Railway Company *v.* Coolidge.

### Opinion delivered November 19, 1904.

1. Carrier—Damages to Freight—Presumption.—While the law raises a *prima facie* presumption, where freight is damaged in transit over several connecting lines, that the last carrier is the negligent one, this presumption is overcome, in a case where the initial carrier is sued for unreasonable delay in transmitting a through shipment of perishable goods, by proof that both the initial and the last carriers were guilty of unreasonable delay. (Page 114.)

2. Same—Delay—Concurrent Negligence.—Where, in the case of a through shipment of perishable freight, the evidence shows that the initial and last carriers were each guilty of negligent delay contributing to the injury sued for, and it is impossible to ascertain to what extent the negligence of either carrier caused the loss, either or both of the carriers are liable for the damages sustained. (Page 116.)

3. Same—Damages for Delay.—The general rule of damages for unreasonable delay in transporting goods is the difference between the market value of the goods at the time and place when and where they should have been delivered and their value when they were delivered, with interest. (Page 116.)

4. Same—Limitation of Liability.—A contract limiting or restricting the common-law rule as to the liability of a carrier for negligence in the shipment of goods is valid only when based on a consideration. usually a reduction in the rate of freight charged. (Page 117.)

Appeal from Phillips Circuit Court.

Hance N. Hutton, Judge.

Action by Coolidge against the St. Louis, Iron Mountain & Southern Railway Company to recover for damages to freight injured in transit. Judgment for plaintiff, from which defendant has appealed. Affirmed.

*Dodge & Johnson,* for appellant.

The verdict is unsupported by the evidence. At common law a carrier was not liable for loss by decay, where such loss is the result of nature, vice or defect, inherent in the goods carried, and in no sense the result of his own negligence. Story, Bailm. § 492*a*. As recognizing the right of the carrier to contract against liability for loss occasioned by the natural steaming and consequent decay of green vegetables, see: 46 Ark. 210; 111 Mass. 142. Where goods pass over the lines of several connecting carriers, in the absence of proof showing upon what line the damage occurred, the presumption is that it occurred while the goods were in the hands of the delivering or final carrier. Hutch. Carr. § 149; 34 S. W. 414; 34 S. W. 785; 28 Wis. 204; 14 Am. & Eng. R. Cas. 211; 65 N. E. 400; 92 Ga. 699. The reason for this rule is that the law casts the burden of proving a negative averment upon him who is better able to adduce the proof on the subject. 1 Gr. Ev. § 79; 43 Barb. 225; 26 Fla. 155; 30 Am. St. 577. The court erred in giving the first, second and third instructions asked by appellee. If the contract of shipment stipulates what should be the value of the goods in the event of loss or damage, it is binding upon the parties. 112 U. S. 331; 137 Mass. 33; 4 Ell. Railroads, § 1500, p. 2320; 53 Minn. 150, 170; 154 U. S. 1; 46 Ark. 236; 50 Ark. 410.

*E. C. Hornor* and *Rose, Hemingway & Rose,* for appellee.

The provisions of ordinary printed bills of lading are strictly construed as against the railroad company, and will not be extended beyond their plain import. 39 Ark. 523. The rule of damages was correctly stated in the instruction. 48 Ark. 502; 54 Ark. 22. No consideration appears for the alleged relinquishment by the shipper of the carrier's common-law liability. 57 Ark. 112; *Id.* 127.

HILL, C. J. The evidence fairly establishes these facts: On the evening of June 10, 1896, Coolidge delivered at Lexa, Ark., a car of potatoes, in good order, to appellant railroad for shipment over its line to St. Louis, thence by connecting carriers to the consignee in Chicago. The time which should have been consumed in the trip was two days, of which eight hours should be allowed the Chicago & Alton Railway, the connecting carrier at St. Louis, to deliver in Chicago. The time actually consumed was about sixty-five hours, instead of forty, from Lexa to St. Louis, and about fifteen, instead of eight, from St. Louis to Chicago, and then about a day lost in Chicago in delivery after arrival. The car, while in appellant's control, took a side trip from Wynne to Memphis and return, which the evidence shows contributed to the delay, although contended otherwise by the appellant. The potatoes were heated and rotten when delivered to the consignee, who lost a sale of 75 cents a bushel on account of this condition. That price was the fair market price at Chicago at the time they should have arrived. The consignee put men into the car, and saved what he could from the lot, and peddled out the salable potatoes, realizing $97 for the carload. This suit is for what they would have brought, had it not been for this damage to them. They cost at Lexa 30 cents per bushel, and were there properly packed into the car. There was no evidence of the condition of the potatoes from the time they left Lexa in good order till they reached the consignee rotten and heated.

There is evidence that delay in transportation of potatoes at that season of the year causes them to heat and rot; that the weather was very warm, and that the time consumed in the unnecessary trip from Wynne to Memphis and return would increase the likelihood of damage to the potatoes.

1. In the absence of evidence locating the damage to goods in transit over several connecting lines, a *prima facie* presumption arises that the last carrier is the negligent one. *St. Louis Southwestern Ry. Co.* v. *Birdwell,* 72 Ark. 502; *Moore* v. *New York, etc., R. Co.,* 14 Am. & Eng. R. Cases (N. S.), 210; *Cote* v. *New York, etc., R. Co.,* 65 N. E. Rep. 400; *Faison* v. *Ala., etc., R. Co.,* 69 Miss. 569; *Savannah, etc., Ry. Co.* v. *Harris,* 26 Fla. 148; *Texas, etc., R. Co.* v. *Brown,* 37

S. W. Rep. 785; *Gulf, etc., R. Co.* v. *Edloff,* 34 S. W. 414; *Laughlin* v. *Chicago, etc., R. Co.,* 28 Wis. 204; *Smith* v. *New York, etc., R. Co.,* 43 Barb. 225. When the initial carrier receives the goods in good order, the law presumes that each successive carrier intermediate between the initial and last carrier receives them in good order; and this presumption, working through to the last carrier who delivers them in bad order, leaves the responsibility upon him unless he can show by evidence that the damage occurred prior to his receiving them. *Louisville & N. R. Co.* v. *Jones,* 100 Ala. 263; *Savannah, etc., R. Co.* v. *Harris,* 26 Fla. 148; Hutchinson on Carriers, § 761; 6 Am & Eng. Enc. (2d Ed.) p. 752. All of these authorities declare this presumption only arises in the absence of evidence, and its purpose is to cast the burden of proof upon the party having the knowledge or means of knowledge to ascertain the truth. The appellant invokes the presumption as a defense here. If the evidence is sufficient to show negligence in the appellant as the initial carrier which caused the injury, then the presumption is overcome.

The difficulty in this case is in determining whether the injury was caused by the delay of the initial or the last carrier, or both. The Georgia court announced this rule in regard to perishable goods: "Unreasonable delay in forwarding fruit would be negligence, because prolonging the time within which, by the operation of natural laws, decay will be produced, and therefore such negligence would contribute to causing the damage." *Forrester* v. *Ga. Rd. & Banking Co.,* 92 Ga. 699. In a Massachusetts case where a carrier contracted to deliver apples to a connecting carrier by a fixed time, and negligently delayed delivering them, and they froze in the possession of the connecting carrier, the court said: "If the freezing had occurred on defendant's line, it can not be doubted that the law would regard the delay as the proximate cause of the damage; it is none the less so because it happened on a connecting line. The damage was not caused by any extraordinary event subsequently occurring, but was caused by the event which was, according to common experience, naturally and reasonably to be expected, a change of temperature." *Fox* v. *Boston & Maine R. Co.,* 148 Mass. 220. In the absence of a contract fixing the time for delivery to the connecting carrier, the law fixes a reasonable time, and what is a reasonable time must be determined from the

length of the journey, the usual time, the weather, the nature of goods transported, etc. Hutchinson on Carriers, § 329.

Under these authorities,· which are consonant to reason and justice, the evidence is sufficient to hold the initial carrier was guilty of a ˙negligent act—the delay in transportation of this class of goods in the season when weather conditions naturally produce delay—which caused, in whole or in part, the condition in which they reached the consignee. It is evident that the last carrier· was equally or more negligent than the initial carrier, but that does not change the rule, and merely renders each or both liable when the act of either is an efficient and proximate cause of the injury. "This rule obtains, although it is impossible to determine in what proportion each of the wrongdoers contributed to the injury; although the act alone of the party sued might have caused the entire injury; and although, if his acts had not concurred in producing the wrong, the same damages would have resulted from the act of the other." 1 Thompson on Negligence, § 76.

This court, in *City Electric St. Ry. Co.* v. *Conery,* 61 Ark. 381, announced this rule, as stated in the syllabus: "The concurring negligence of two parties makes both liable to a third party injured thereby, if the injury would not have occurred from the negligence of one of them only." It is impossible from this evidence, and likely from any evidence, to ascertain that the injury was caused solely by one of the carriers, and, finding both guilty of an efficient and proximate cause therefor, either or both must be held, unless the party guilty of such negligence can show and does show that its negligence did not produce, in whole or in part, that result which follows naturally and proximately from the negligent act.

2. The appellant claims that the verdict is excessive. That depends on the measure of damages: shall it be taken to be at Chicago at the time the goods were due there, or shall it be controlled by the bill of lading, which stipulates that the value of the same at point of shipment shall determine the measure in the event of loss of the goods? Conceding, without deciding, that loss of goods includes loss in value, does the contract control? It cannot be disputed that, in the absence of this contract, the legal liability would be for the price at Chicago at the time the

potatoes were due there. *St. Louis, I. M. & S. Ry. Co.* v. *Mudford,* 48 Ark. 502; *St. Louis, I. M. & S. Ry. Co.* v. *Phelps,* 46 Ark. 485; *East Tenn. Va. & G. R. Co.* v. *Johnson,* 85 Ga. 497; *Fox* v. *Boston & Maine R. Co.,* 148 Mass. 220. Hutchinson on Carriers, § 767; Ray on Imposed Duties of Freight Carriers, p. 1036.

Contracts restricting the liabilities imposed on carriers by law are only valid when fair and reasonable and upon a consideration, usually a reduced rate of freight, in consideration of the release from given legal liabilities. *Ry. Co.* v *Cravens,* 57 Ark. 112; *Ry. Co.* v. *Spann,* 57 Ark. 127. This rule is applied to contracts fixing a given value in case of loss. *St. Louis, I. M. & S. Ry. Co.* v. *Lesser,* 46 Ark. 236; *St. Louis, I. M. & S. Ry. Co.* v. *Weakley,* 50 Ark. 397; *Zouch* v. *Chesapeake & O. R. Co.,* 17 L. R. A. 116; Ray on Imposed Duties of Freight Carriers, § 13. These principles and authorities control, and without a consideration this clause of the contract is void. Applying the Chicago price as the measure, deducting the $97 for the damaged goods, allowing 6 per cent. interest from date of due delivery, and the verdict is a trifle less than it might be. The judgment is affirmed.

McCULLOCH, J., did not participate.