## ST. LOUIS, I. M. & S. RY. CO. v. CARLILE.

No. 2110.    Opinion Filed December 3, 1912.

(128 Pac. 690.)

1. WITNESSES—Knowledge—Testimony From Writing. In an action by a shipper against the initial carrier for loss of a quantity of potatoes out of a car-load shipment that had to pass over a line of a connecting carrier in order to reach its destination, it was error to permit a witness who had no knowledge of the weight of the car when delivered to the connecting carrier, or when delivered to the consignee, and who had never been in the employment of the connecting carrier, and had been in no way connected with the execution of a purported waybill of the connecting carrier for said car of potatoes, to testify what the car of potatoes weighed when it was received by the connecting carrier, as shown by said purported waybill.

2. CARRIERS — Connecting Carriers—Loss of Freight—Extent of Liability. The shipment was made from a point in the Indian Territory to Chicago prior to the passage of act of Congress of June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 (U. S. Comp. St. Supp. 1911, p. 1304). Held that, in the absence of any agreement constituting the carriers partners or joint undertakers, and in the absence of any special agreement by the initial carrier assuming liability for the shipment over the entire route, the initial carrier was liable only for the loss or injury occurring on its own line.

3. SAME—Presumption of Liability. When, upon the shipment's being delivered, it was found that a part thereof had been lost, the presumption is that such loss occurred on the line of the delivering carrier; and there is no presumption that the loss occurred while the goods were in the hands of the initial carrier.

(Syllabus by the Court.)

*Error from District Court, Sequoyah County;
John H. Pitchford, Judge.*

Action by Thomas Carlile against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Lovick P. Miles* and *Vincent M. Miles,* for plaintiff in error.

HAYES, J. Defendant in error, hereinafter called plaintiff, originally filed this action against plaintiff in error, herein-

after called defendant, in the United States commissioners' court at Sallisaw, Indian Territory, where judgment by default was rendered and entered against defendant, from which judgment defendant prosecuted an appeal to the United States Court for the Northern District of the Indian Territory, where the same was pending at the time of the admission of the state, and was, by reason of the provisions of the Enabling Act and Schedule to the Constitution, transferred to the district court of Sequoyah county. The trial in that court to a jury resulted in a verdict and judgment in favor of plaintiff, to reverse which this appeal is prosecuted.

Plaintiff alleges in his petition filed in the United States commissioners' court that on June 14, 1906, he delivered to defendant 251 sacks of Irish potatoes, weighing 29,990 pounds, which were received by defendant into a Missouri Pacific car, No. 6119, at Illinois Station, Indian Territory, with the agreement that the same should be shipped and delivered to James Flood, Chicago, Ill. He alleges that defendant thereafter delivered to the consignee 22,000 pounds of said potatoes, but failed and refused to deliver the remainder thereof in the total amount of 7,990 pounds, and asked judgment for the value of the potatoes plaintiff failed to deliver at 70 cents per bushel, less freight thereon from Illinois Station, Ind. T., to Chicago.

At the trial in the court below the present agent of defendant at Illinois Station testified on behalf of plaintiff; and, refreshing his memory from the records in defendant's office at said station, he testified as to the receipt of the potatoes as alleged in plaintiff's petition. Thereupon counsel for plaintiff handed to him a waybill or expense bill, which the witness stated was a Wabash expense bill for said car 6119, M. O. P. He was thereupon asked if he could take said waybill and tell from it how many pounds of potatoes were delivered at Chicago. Over the objection of defendant, he was permitted to answer that the waybill showed only 22,000 pounds. This waybill was never introduced in evidence, but it is attached to the case-made as an exhibit. It bears the signature of no one, and is made upon the printed form of the Wabash Railroad Company, and purports to

be an account stated for charges on articles transported by said railroad company. The witness testifying did not claim to have written said waybill himself at the time of the shipment of the potatoes, or that he was in the employ of the Wabash Railroad Company at that time, and said record was not in the possession of the witness until handed him by counsel for plaintiff. Counsel for plaintiff testified that he came into possession of said waybill by receiving same attached to a letter written to him by defendant's claim agent. We know of no theory upon which the foregoing evidence objected to was admissible. If the contents of said waybill had been competent evidence, the bill itself would have been the best evidence. It did not constitute a record or memorandum prepared by the witness, and he could not therefore refer to it for the purpose of refreshing his memory; and, being without any personal knowledge of the matters it purports to contain, his testifying therefrom as to the number of pounds of potatoes delivered at Chicago constitutes hearsay testimony and was incompetent. Again, the evidence fails to establish the execution of said instrument by the Wabash Railroad Company or any of its agents; and if this had been done we think said waybill or its contents would not have been competent evidence, for the reason that the Wabash Railroad is not a party to this proceeding, and therefore the waybill could not be admitted as a statement against interest, and would constitute only the statement of a third person not under oath. Again, the instrument does not purport on its face to show the number of pounds of potatoes delivered to the consignee, but only the number of pounds on which both defendant and the Wabash Railroad Company charged freight. It shows that the Wabash Railroad Company charged freight on exactly the same number of sacks, to wit, 251, that were delivered to defendant by plaintiff at Illinois Station. The unreliability of this kind of evidence to establish the quantity of potatoes delivered is apparent, when considered in view of a practice of railway companies of furnishing cars to shippers of minimum weight capacity and charging thereon for such minimum weight of capacity, regardless of whether the cars are filled to that capacity or not, and in many instances charging

for said minimum weight, although the weight of the goods placed therein is in excess of such minimum weight.

The foregoing evidence is all the evidence in the record tending to show either that the amount of the potatoes was not delivered to the consignee, or was not delivered by defendant railway company to its connecting carrier, the Wabash Railroad Company. The evidence establishes that defendant operates no line of railway into Chicago, but that the consignment of potatoes was billed to St. Louis, to be transported from that point to the consignee by the connecting carrier. Under this state of the record, a demurrer to the evidence should have been sustained.

This action occurred prior to the act of Congress of June 29, 1906, c. 3591, sec. 7, 34 St. at L. 593 (U. S. Comp. St. Supp. 1911, p. 1304), which makes the initial carrier liable for all loss of goods during transit, whether occurring on the line of the initial carrier or upon the line of the connecting carrier; and the provisions of said act, therefore, have no application. In the absence of such statute, the rule adopted in this jurisdiction, which appears to be supported by the weight of authority, is that, where property is delivered to a carrier consigned to a point beyond its line, and in order to reach the point of consignment must pass over several lines of connecting carriers, in the absence of any agreement constituting the carriers partners or joint undertakers, and in the absence of a special agreement, each carrier is liable only for the loss or injury occurring on its own line. *Church v. Atchison, T. & S. F. Ry. Co.,* 1 Okla. 44, 29 Pac. 530. See, also, *Hot Springs Railroad v. Trippe & Co.,* 42 Ark. 465, 48 Am. Rep. 65; *Faison v. Alabama & Vicksburg Ry. Co.,* 69 Miss. 569, 13 South. 37, 30 Am. St. Rep. 577; *Montgomery & W. P. R. Co. v. Moore,* 51 Ala. 394; 6 Cyc. 490.

When the goods shipped, upon reaching their destination, are found to be injured or some of them lost, the presumption is that such injury or loss occurred on the line of the delivering carrier; and there is no presumption that the injury or loss occurred while the goods were in the hands of the initial carrier. *Atchison, T. & S. F. Ry. Co. v. Rutherford et al.,* 29 Okla. 850, 120 Pac. 266; *St. Louis & S. F. Ry. Co. v. McGivney,* 19 Okla. 361, 91 Pac.

693; *St. L., I. M. & S. Ry. Co. v. Coolidge,* 73 Ark. 112, 83 S. W. 333, 67 L. R. A. 555, 108 Am. St. Rep. 21, 3 Ann. Cas. 582; *St. Louis S. W. Ry. Co. v. Birdwell,* 72 Ark. 502, 82 S. W. 835.

Plaintiff having alleged and established by his evidence that the car of potatoes was delivered to a connecting carrier, who delivered same to the consignee, the burden was upon him to prove that not all the potatoes received by the initial carrier and placed in the car were delivered to the consignee, and that their loss occurred before delivery of the car by the initial carrier to the connecting carrier; and, as there is absence of any competent evidence in the record to establish this fact, a demurrer to plaintiff's evidence should have been sustained.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded.

TURNER, C. J., and· WILLIAMS and DUNN, JJ., concur; KANE, J., not participating.