CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v.
GEORGE E. SHELTON PRODUCE COMPANY.

Opinion delivered February 28, 1927.

1. CARRIERS—CONNECTING ROADS—PRESUMPTION OF NEGLIGENCE.—In the absence of evidence locating the damage to goods in transit, a *prima facie* presumption arises that the last carrier is the negligent one.

2. CARRIERS—FAILURE TO RE-ICE CAR.—A delivering carrier's failure to re-ice a car of perishable freight received by it with knowledge that there was no messenger in charge, and that it had been iced two days previously, constituted negligence, making it liable for resulting damages, unless relieved of duty to re-ice by the terms of the bill of lading.

3. CARRIERS—DUTY TO RE-ICE CAR.—A delivering carrier is authorized by the perishable protective tariff of the Interstate Commerce Commission to re-ice a car of bananas in the usual way, where the messenger, without notice to the consignor or consignee, left the train without leaving directions for re-icing, and hence the carrier was not relieved from liability for damage from its failure to do so, without making any effort to procure instructions from the owner in accordance with ordinary procedure.

Appeal from Pulaski Circuit Court, Second Division; Richard M. Mann, Judge; affirmed.

STATEMENT BY THE COURT.

Appellee brought this suit against appellant for damages alleged to have been caused by its negligence in failing to re-ice a carload of bananas shipped to it at Little Rock, Arkansas, from the Honduran Fruit & Transportation Company of Mobile, Alabama.

The appellant denied any negligence, carelessness or delay in handling the banana shipment, and that it negligently failed to keep the car properly iced, and

pleaded especially that shipment was made under a uniform bill of lading approved by the Interstate Commerce Commission, and under the provisions of perishable protective tariff No. 2, which it alleged was in effect, and set out rule No. 105 of said tariff, relating to the refrigeration and ventilation of cars containing perishable commodities, as follows:

"Bananas, cocoanuts, and pineapples in carloads must not be iced, re-iced, ventilated or given other protective service against heat or cold without specific instructions from shipper, owner or caretaker in charge of cars.

"All such protective service to be furnished to bananas, cocoanuts and pineapples in transit will be governed by the shipper's instructions on the billing, subject to contrary instructions from caretaker in charge, and the caretaker's instructions when he abandons the car shall be given by him in writing and attached securely to the waybill to accompany the car to ultimate destination. In the absence of a caretaker in charge of car, or if caretaker abandons car without giving necessary instructions, the shipment shall be subject to such changed instructions as may be given by the owner."

"That, under the provisions of said rule, the carrier was not permitted to supply ice to the shipment in the absence of specific instructions from the shipper or caretaker to do so. And that the damage resulted to the shipment of bananas from the shipper's failure to perform his duties relative thereto, for which defendant was not liable."

The bananas were shown to have been loaded in good condition and in the customary way. The car was shipped via the L. & N. Railway Company from Mobile, with memorandum notation on the bill of lading and the waybill, "Iced 3 tons, Mobile. Messenger to re-ice when necessary. Messenger in charge." It arrived in Little Rock over the line of appellant at 5:45 A. M. on the morning of the 17th of June, 1923, and was delivered by it on the morning of the 18th to appellee's unloading track.

It is undisputed that the car of bananas was damaged in the amount claimed by lack of ice in the bunkers, or a failure to re-ice the car when necessary. The car was re-iced at Birmingham, Alabama, on the 14th of June, the waybill showing notation, "For re-icing above car at Birmingham, Alabama, messenger instructions," and it was not re-iced thereafter, and the messenger left the car at Birmingham, Alabama, was not on the train carrying this car any more thereafter. There was no communication between the messenger and the railway company, and none between the owner or the shipper and the railway company, until after the arrival of the car in Little Rock, and the car was transported from Memphis to Little Rock without delay on the first available train after it was received by appellant company. Notice of the arrival of the car was mailed to appellee at 10:20 A. M. on the 18th.

George Shelton, president of appellee company, stated he was at his place of business as late as 6 o'clock on the evening of June 17, the day the shipment reached Little Rock, and that he got notice of its arrival Monday morning, June 18, about 10 o'clock, after he had noticed the car on his unloading track about 6:30 that morning. He also stated the cause of the damage was lack of ice, and that there is a regular icing station at Hulbert, which is just across the river from Memphis about four, or five miles.

The conductor of the train testified about the waybills and the notations, and stated that he knew the messenger was not on the car after the train left Hulbert, which is one of the company's regular icing stations, where he got the car from the Frisco, and that he never saw the messenger at all. He was not on his train, and the car was not re-iced at Hulbert, so far as he knew.

Rule No. 105, as pleaded and set out in the complaint, was introduced in evidence, and also paragraphs (B), (C), (E), and (F), rule 225, § No. 2 of the tariff, which read as follows:

"Paragraph (B) under rule 225, § No. 2 of Tariff-Service at Destination—(Will not apply at destinations in Canada). After arrival of a car in the terminal train yard serving the destination, and up to the time the car is in process of unloading on team tracks, or until car has been placed on private or assigned siding, carriers will examine bunkers or tanks daily, and when such cars require additional ice during such period they will be re-iced to capacity. However, after the unloading on team tracks has been commenced, any additional re-icing will be furnished only on written instructions from shipper, owner or consignee.

"(C) of same Rule.—Non-acceptance of instructions to re-ice: No instructions whatever will be accepted from shippers, owners or consignees for the re-icing of cars at any intermediate stop, hold or reconsigning point, nor at final destination before shipment is in process of unloading on team track nor before it has been placed on private or assigned tracks. Written instructions will be accepted by the carrier reading 'Do not re-ice car' at destination after delivery has been accepted.

"(E) of same Rule.—Charge for icing at destinations: A charge as provided in § No. 4 of tariff as amended, for all ice supplied after arrival of cars in train yards serving the final destination, without allowance for free time, will be made and collected from consignee in addition to all other charges. (See Paragraph F).

"(F) of same Rule.—Bunkers three-fourths full upon arrival in train yards: Carriers will deliver cars in train yards serving intermediate stop points and destination with bunkers three-fourths (¾) or more full of ice. If and when to accomplish this result at intermediate stop points and destination such cars are re-iced, they will be re-iced to capacity. Bills for ice so supplied will be rendered against carrier to which the refrigeration revenue is credited."

Section No. 4 provides: "If shipper fails or neglects to give in shipping order and/or bill of lading one of the

notations provided in paragraph 'B' above, the carriers will re-ice car at all re-icing stations (if ice has previously been used), using salt if same has been previously used, and charges for such service will be on basis of the table of charges in this section. Exception: See Rule No. 105)."

A jury was waived, and the cause was tried by the court, which found that, under the rules of the tariff, the particular shipment would require icing at sufficient times, or in the necessary and established manner, a failure to do which would render the railway company liable for the damages; that, under the testimony, it was liable, and rendered judgment for the sum claimed, with interest, from which this appeal is prosecuted.

*Thos. S. Buzbee, H. T. Harrison* and *Geo. B. Pugh,* for appellant.

*Mehaffy & Mehaffy,* for appellee.

KIRBY, J., (after stating the facts). The undisputed testimony shows that the shipment of bananas was properly loaded and in good condition when it left Mobile on the 13th of June; that it was re-iced afterwards only at Birmingham, Alabama, on the 14th of June. It was received by appellant from the connecting carrier at Hulbert, and left there on its train at 10 o'clock on the evening of the 16th; arrived in Little Rock on the morning of the 17th, and delivered to appellant's unloading track on the morning of the 18th, notice of delivery having been received by it at 10 o'clock of that day. The bananas were then in a heated and damaged condition because of lack of refrigeration, due to the carrier's failure to re-ice the car either at Hulbert or upon its arrival in Little Rock, the day before its delivery.

A *prima facie* presumption arises that the last carrier is the negligent one, in the absence of evidence locating the damage to goods in transit over several connecting lines. *St. L. I. M. & S. R. Co.* v. *Coolidge,* 73 Ark. 112; *H. Rouw Co.* v. *St. Louis-San Francisco Ry. Co., ante,* p. 881.

The evidence discloses here however that the court found that the damage resulted from failure to re-ice the car after it came into appellant's possession, with the knowledge that there was no messenger in charge, and the shipment was last iced at Birmingham, Alabama. Such failure constituted negligence making the carrier liable to the payment of any resulting damages, unless it was relieved of the duty to re-ice the car by the terms of the contract of shipment, the bill of lading.

It was known by the connecting carrier transporting the car from Birmingham that it had been re-iced there, according to the directions of messenger, who was not on the train thereafter, and it was not shown whether he left further directions as to re-icing the car. Neither was it shown that the consignor or the consignee had any notice or information that the messenger was no longer on the train in charge of the shipment; that instructions could be had from them as to re-icing if the necessity therefor arose, in the absence of instructions from the messenger relating thereto.

We think that the tariff provides for this contingency, and authorizes the carrier to re-ice the shipment in the usual and customary way under such condition, and make the proper charge therefor. Certainly the delivering carrier cannot relieve itself from liability to the payment of the damage arising from its failure to re-ice the car under the circumstances of this case.

It is equally as liable for damages resulting from its negligence for failure to do so as though no messenger had accompanied the car in the first instance, and especially since none of the carriers, after knowing that the messenger had abandoned the shipment, made any effort to procure instructions from the owner about re-icing it, notwithstanding that, in accordance with their ordinary procedure and the care required of them in transportation of freight, they would have been required to do so.

We find no error in the record, and the judgment is affirmed.

Mehaffy, J., disqualified.