St. Louis, Iron Mountain & Southern Railway Company
v. Marshall.

Opinion delivered April 1, 1905.

1. Carriers of freight—connecting lines—presumption as to injury.—Although, on the delivery of freight at destination by a connecting carrier in a damaged condition, the presumption is that the last carrier is responsible for the injury, this presumption is overcome by evidence showing that it was caused by the initial carrier. (Page 599.)

2. Defective car—liability.—For damage resulting from a defect in a car furnished for the shipment of freight the carrier which furnished the defective car is liable, although the actual injury may have occurred beyond such carrier's line. (Page 599.)

3. Same—knowledge of shipper.—One who ships freight in a defective car is not precluded from recovering any damage resulting from such defective condition of the car by the fact that he inspected the car before its acceptance, and was aware of its condition. (Page 600.)

4. Damage—market.—A stipulation in a bill of lading that in the event of loss of freight its value at the point of shipment shall be the measure of damages is void unless based on a consideration. (Page 600.)

Appeal from Lee Circuit Court.

Hance N. Hutton, Judge.

Affirmed.

STATEMENT BY THE COURT.

The appellee, Marshall, desired to ship potatoes to Cleveland, Ohio, and applied to the station agent of the appellant railroad company, at La Grange, for a ventilator car for such shipment. He was told by the agent to let him know a few days in advance of the exact time when the car was wanted, and it would be furnished. Marshall gave notice on Friday that he would want the car on the following Tuesday, and the agent promised to have it ready on that date for the shipment. Marshall then commenced digging and hauling his potatoes, so as to have the carload ready on that date. On Monday night a car was brought into La Grange for Marshall. It was a cattle car, in bad order, and too small. Marshall told the agent it would

not do, and the agent told him that he would have another one brought from Helena the next day, which would be the kind wanted. The car arrived the next day, and was not a ventilator car, but a Canada cattle car, and the roof was broken and defective, and the floor covered with manure. Marshall called the attention of the agent to its condition and unfitness for the shipment, and asked for another car. The agent told him he could not get another car in less than two weeks. The potatoes were then ready for shipment, and the weather was warm, it being the 26th of June, and they would not keep. Marshall cleaned the floor, and patched the roof as best he could, and then loaded the potatoes into the car, but after his work the roof and bottom of the car were still in bad condition. The potatoes were in good condition when shipped. The car was hauled by appellant to St. Louis, and then delivered to a connecting carrier, and it was hauled to Cleveland by the connecting carrier, and delivered to the consignee on the 1st of July. The potatoes were in bad order when received in Cleveland, and the uncontroverted evidence is that their damaged condition was due to the car having passed through rain storms in transit, and, owing to the defective roof, the potatoes were rained upon, and that, with the manure in the bottom, caused them to rot. They were sold at once to the best advantage, and brought less than if they had reached Cleveland in good order. This suit is for the difference between the amount received, and what would have been received had they been delivered in good order. The plaintiff, Marshall, recovered. If the Cleveland market is to govern, the verdict is supported by the evidence. If the La Grange market is to govern, there is a controversy as to whether the verdict is excessive. The appellant introduced the bill of lading, which is in usual form, and contains these clauses: "And it is further especially understood that for all loss or damage occurring in the transit of said property, the legal remedy shall be against the particular carrier only in whose custody the said property may actually be at the time of the happening thereof—it being understood that St. Louis, Iron Mountain & Southern Railway Company, in receiving the said property to be forwarded as aforesaid, assumes no other responsibility for its safety or safe carriage than may be incurred on its own road. * * * *In the event of loss*

*of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement."*

*B. S. Johnson,* for appellant.

In the absence of proof, it will be presumed that the damage occurred while in the hands of final carrier. 5 Am. & Eng. Enc. Law, 357; 6 *Id.* 625; 34 S. W. 414, 785; 28 Wis. 204; 65 N. E. 400; 92 Ga. 699; 1 Greenleaf, Ev. § 79; 43 Barb. 225; 26 Fla. 155; 69 Miss. 569; 72 Ark. 502; 35 Ark. 402; 50 Ark. 397; 6 Am. & Eng. Enc. Law, 615; 100 Ala. 263; 166 Mass. 154; 30 Minn. 438; 69 Miss. 569; 79 Ia. 518; 92 Ga. 699; 81 S. W. 1014; 67 S. W. 78; 68 S. W. 56. The testimony upon the measure of damages was incompetent. 137 Mass. 33; 75 S. W. 782; 51 Mo. App. 665; 8 Am. & Eng. Enc. Law, 636; 112 U. S. 331; 52 Ala. 606; 80 Ala. 38; 17 Ill. App. 640, 14; 51 Mo. App. 665; 40 Ark. 236.

*P. D. McCulloch,* for appellee

HILL, C. J., (after stating the facts.)   The uncontroverted evidence is that the defective and unsuitable car was the cause of the injury to the potatoes. The appellant contends that there is no evidence of injury upon its line from La Grange to St. Louis, and that its obligation ceased when the goods were delivered to the connecting carrier, and that, in the absence of evidence, the presumption is that the last carrier is the responsible carrier.   In answer to a similar contention in *St. Louis, Iron Mountain & Southern Railway Co.* v. *Coolidge,* 73 Ark. 112, the court said: "If the evidence is sufficient to show negligence in the appellant as the initial carrier which caused the injury, then the presumption is overcome."

The carrier must furnish suitable and proper cars for the purposes of the shipment. 4 Elliott on Railroads, § 1475.   If the carrier fails to furnish proper cars, and damage results from the defect in the car, then the carrier who furnished the defective car is liable, although the actual injury may have occurred beyond its line. *Indianapolis, etc. Ry.* v. *Strain,* 81 Ill. 504; *Ala. & Vicksburg Ry.* v. *Searles,* 71 Miss. 744; *Searles* v. *Ala. &*

*Vicksburg Ry.* 69 Miss. 186; 4 Elliott, Railroads, § 1448, and notes.

This is true, although the shipper may have inspected the car before its acceptance, and was aware of its condition. The Supreme Court of the United States thus stated this proposition: "It is said that Pratt was aware of the defective condition of the car; that he voluntarily made use of it; and that the risk of loss by its use thus become his, and ceased to be that of the company. The judge charged the jury that it was the duty of the carrier to furnish suitable vehicles of transportation; that if he furnished unfit or unsafe vehicles, he is not exempted from responsibility by the fact that the shipper knew them to be defective and used them; and that nothing less than a direct agreement by the shipper to assume the risk would have that effect. * * * The authorities sustain the position taken by the judge at the trial. * * * The judge at the trial in this case might have gone much further than he did, and charged that, if the jury found the company to have been negligent and careless in furnishing cars, they would not be relieved from responsibility, although there had been an agreement that they should not be liable therefor." *Railroad Co.* v. *Pratt,* 22 Wall. 123. This doctrine was approved in *St. Louis, I. M. & S. Ry. Co.* v. *Lesser,* 46 Ark. 236, and other authorities there cited.

The clause in the contract fixing the market at the point of shipment, instead of the point of delivery, as the measure of damage was passed upon in *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge, supra,* where it was held that the clause was void unless there was a consideration for it.

The judgment is affirmed.

McCulloch, J., being disqualified, did not participate.