KANSAS CITY SOUTHERN RAILWAY COMPANY v. EMBRY.

Opinion delivered October 21, 1905.

1. APPEAL—HARMLESS ERROR.—Where an agreement reducing the liability of a railway company for the loss of freight was neither pleaded nor proved, it was not prejudicial error to permit plaintiff to prove that she never made such an agreement, nor to instruct the jury that she was not bound thereby. (Page 593.)

2. CONNECTING CARRIERS—PRESUMPTION IN CASE OF DAMAGE.—In the absence of evidence locating the damage to goods in transit over two connecting lines, a prima facie presumption arises that the last carrier is the negligent one; and this presumption is not overcome by proof that the injury occurred after the property had been discharged by the initial carrier at a station in charge of a joint agent of the carriers, though the agent had not performed some act, such as executing receipt or the like, necessary to constitute a delivery as between the two carriers. (Page 593.)

3. SAME—LIABILITY FOR ACTS OF JOINT AGENT.—Where connecting carriers jointly employ a common agent in the prosecution of a joint enterprise as carriers, they become jointly liable for his defaults. (Page 594.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

### STATEMENT BY THE COURT.

This is an action brought by appellee in the Miller Circuit Court against appellant, the Kansas City Southern Railway Company, to recover damages to a piano and sewing machine shipped by plaintiff over defendant's road.

The complaint alleges, in substance, that on September 13, 1901, plaintiff shipped a piano and sewing machine from South McAlester, Indian Territory, to Texarkana, Arkansas, bill of lading being issued at South McAlester, Indian Territory, to be delivered at Texarkana, Ark., in good condition and with the proper care; but that at Howe Junction, a station on said defendant's railway, said piano and sewing machine were put on the railway platform, and by the wilful negligence of the defendant, its agents and employees, were exposed to a severe rain for a period of several hours without protection of any kind, and the piano was thereby damaged in the sum of $250, and said sewing machine was damaged in the sum of $20.

Defendant in the answer denied each and every allegation of the complaint.

The cause was tried before a jury, and a verdict returned in favor of the plaintiff fixing damages at $185 on the piano, and $15 on the sewing machine.

The articles in question were shipped from South McAlester, Indian Territory, to Texarkana, Ark., over the Choctaw, Oklahoma & Gulf Railroad from the initial point of shipment to Howe Junction, at which point the two roads cross, thence to Texarkana over appellant's road, and the bill of lading was issued by the agent of the first-named railroad company at South McAlester. The bill of lading contains a stipulation limiting the liability of the connecting carriers to the damages accruing on their respective lines. The two companies maintained a joint station at Howe Junction, with joint agents in charge thereof.

Mrs. C. D. Payne, the mother of the plaintiff, testified that the piano and sewing machine were shipped from South McAlester to Texarkana by her on the 12th of September, 1901, and that she obtained the bill of lading; the piano and sewing machine being the property of her daughter, Mrs. Embry, who was ill at the time. Continuing, this witness said: "It was raining

when we left South McAlester. When I got to Howe, it was about 10 o'clock or 10:30. I had to wait for the Kansas City Southern there for a while. When I got on the platform, it was still raining. I noticed the piano on the platform. It was a little station. It was over on one side, and I got off on the other side. I wanted to see if it was my piano. I left my daughter, who was sick, in the station, and went over there, and found it was. I went to the freight office, and asked the agent about it. I said: 'I shipped that piano yesterday evening, and I see it is in the rain.' He said, 'Yes, I will go have it put in.' He got two negroes, and went, and had it put in, in my presence, in the freight office. I left there about 11 o'clock."

Witness further testified that the piano and machine had been wet and badly damaged. That the piano cost $525, and that the machine cost $65.

C. D. Payne testified that he examined the piano and sewing machine after they arrived at Texarkana, found that they were in bad condition, having been wet. The machine was rusted from dampness, and the parts of the piano were all damp or wet.

The defendant, to maintain the issues upon its part, introduced the deposition of W. C. Charles, who testified in substance that he was the joint agent at Howe for both roads; that he was there in their employ in September and October, 1901. That he remembered the piano very distinctly. It was received from the west sometime during the night over the Choctaw, Oklahoma & Gulf Railroad, and was unloaded by the trainmen on the platform, and remained some time after it was unloaded. On his arrival in the morning at the office he saw the piano sitting on the platform, and was told by the night operator that it was unloaded from an eastbound train. Didn't know whether they refused to set it under, but anyway it was not sitting under the eave of the roof, and had been out in the rain. "My recollection is that the freight remained in Howe about 12 or 15 hours, and was shipped out that evening by the Kansas City Southern local train. I did open the box containing the piano, after taking it into the depot, and, as stated before, I found the piano covered with dust which showed conclusively that there had'nt been a drop of rain touched it. Freight was not in possession of the Kansas City Southern until it had been placed inside of the freight

building and transfer made." The witness also stated, in reference to the custom of receiving freight by one road from the other at Howe, that there was no written or verbal instructions that he knew of. It was simply a custom; the mere fact of freight arriving at the depot would not constitute a delivery until the transfer was made; that he knew of no rules or regulations on the subject—simply referred to the custom.

Defendant introduced as witnesses other employees at Howe Junction, who testified in substance the same as the foregoing. One of them made the following statement concerning the handling of freight at Howe Junction: "As I understand it, when freight is delivered, and we get the bill, we write up the bill, and register it to the Kansas City Southern books as received for shipment. Until this bill is registered, I understand that it is the property of the Choctaw, until they receive the bill, and it is registered up. I know we had'nt registered this bill to the Kansas City Southern."

The court charged the jury, in substance, that if the freight agent at Howe Junction was the joint agent of boths roads, and if the piano and machine were exposed to rain while at the station, the defendant was liable for the damage caused thereby.

*Read & McDonough,* for appellant.

It was error to admit parol testimony to vary the written contract. No liability upon connecting carrier until after delivery to it. Such damages, only, can be recovered as are in contemplation of the parties. Plaintiff was bound by the provisions of the bill of lading. 50 Ark. 397.

*Webber & Webber,* for appellee.

A release couched in terms unintelligible to plaintiff was no notice to her. Deposit of the goods with the carrier for transportation is delivery. Hutchinson, Carriers, 2d. Ed. § 100; 83 Am. Dec. 143; 87 Am. Dec. 301. Maintaining joint agents, the unloading of freight by one road was constructive delivery to the other, and they become jointly liable for their agent's default. Hutchinson on Carriers, 2d Ed. § 90; *Ib.* § § 158-169; 28 C. C. A. 146; 6 Cyc. 486, note 10; 5 Otto, 43-48; 46 Ark. 226; 60 Ark. 333.

McCULLOCH, J., (after stating the facts.) 1. Counsel for appellant assign as error the ruling of the court in permitting Mrs. Payne, witness for appellee, to testify as to conversation

with the railroad agent at South McAlester. She testified that she had no knowledge of an indorsement made on the bill of lading by agent reducing, in case of loss, the value of the articles down to $5 per hundredweight; denied that she received reduced freight rate on the shipment; and stated that the agent said to her:_ "We are responsible for your goods or any damage to your goods." Counsel also contend that the court erred in its instruction to the effect that the indorsement on the bill of lading reducing the value of the articles down to $5 was not binding on appellee if she contracted to pay the highest rate for freight, and had no knowledge of the indorsement. We need not determine whether the evidence was competent, or the instruction in question proper, as there was no prejudice to appellant in either ruling. Appellant did not plead the release, and, as the same was not in issue, no harm resulted in permitting appellee to prove that she did not agree to the release, nor in instructing the jury that she was not bound by the indorsement. Nor is any release sufficiently proved. The bill of lading shows on its face an indorsement of the abbreviation, "Rel. Val. $5 Cwt." Nothing appears on the bill of lading nor in the testimony to explain what the terms imply, though counsel argue that they imply an agreement to reduce the value of the property, in case of loss or damage, down to $5 per hundredweight. The court cannot assume that they mean any such thing. The bill of lading contains a clause providing that, "in case of loss or damage sustained by any property herein receipted for, whereby any liability or responsibility may be incurred, *the amount of loss or damage shall be computed at the value or cost of the articles herein mentioned at the place and time of shipment."* In the face of this provision no ambiguous stipulation limiting liability can be allowed to prevail against it.

2. It has been several times held by this court, and the rule is undoubtedly supported by substantially all the authorities, that, "in the absence of evidence locating the damage to goods in transit over several connecting lines, a *prima facie* presumption arises that the last carrier is the negligent one." *St. Louis S. W. Ry. Co.* v. *Birdwell,* 72 Ark. 502; *St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112, 83 S. W. 333.

In this case there is evidence that the damage occurred while the property was at a station maintained jointly by both carriers, and the presumption still arises, until the contrary is shown by evidence, that the damage occurred after the delivery to appellant as the last carrier. Appellant seeks to overcome this presumption by proving a prevailing custom that, notwithstanding the fact that the freight is discharged at a station in charge of a joint agent of the two companies, and is then negligently exposed to injury, it is not considered as delivered to the last carrier until a record showing a delivery to the last carrier is made by the joint agent upon the books. We cannot approve any such doctrine. The two carriers were both liable for the negligence of their common agent; and, as against the person whose property was damaged thereby, the responsibility cannot be shifted by showing that the common agent had not performed some act, such as executing receipt or the like, necessary to constitute a delivery as between the two principals. The rule is correctly announced in Hutchinson on Carriers, § 169, that "where they (connecting carriers) jointly employ a common agent in the prosecution of a joint enterprise as carriers, they become jointly liable for his defaults." See also 1 Elliott, Railroads, § 1447.

The undisputed testimony in this case shows that the piano and machine arrived at Howe Junction during the night, and were allowed to remain on the open platform exposed to the rain until nine or ten o'clock the succeeeding morning. Plaintiff's witness testified that she saw it there about ten o'clock on the platform in the rain, and called the attention of the station agent to it. The agent testified that his attention was called to the exposed condition of the piano by Mrs. Payne as late as 9 o'clock next morning, and that it had been rained on. He is not certain whether it was then raining. This makes out a clear case of negligence, for which the appellant is liable.

Affirmed.