ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* RENFROE.

Opinion delivered March 11, 1907.

1. CARRIER—PERISHABLE PROPERTY—DUTY TO PRESERVE.—Where a carrier accepts perishable fruit for through transportation, it is its duty to furnish cars especially adapted to the preservation of such fruit during the time required for its transportation from the place of shipment to the place of destination. (Page 148.)

2. SAME—FAILURE TO CARRY SAFELY—DEFENSE.—Where a railroad company undertook to ship perishable fruit in a refrigerator car properly iced, it will be liable to the shipper for a failure to comply with its undertaking, though it had a contract with an independent contractor to furnish the car and to ice the car when furnished. (Page 149.)

3. CONNECTING CARRIERS—PRESUMPTION AS TO LIABILITY—REBUTTAL.—Although, in the case of connecting carriers, the presumption is that the delivering carrier caused the injury, this presumption obtains only in the absence of proof locating the negligent carrier. (Page 150.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT. ○

This was a suit begun in the Crawford Circuit Court by the appellees to recover damages which it was claimed they had suffered by reason of failure of the St. Louis, Iron Mountain & Southern Railway Company to keep properly iced a refrigerator carload of berries, which they allege were shipped by themselves from Alma, Arkansas, to Kansas City, Missouri. Appellees alleged that the St. Louis, Iron Mountain & Southern Railway Company "was on the 27th day of April, 1905, the lessee, operator and manager of a line of railway from Alma, Arkansas, to Kansas City, Missouri." Appellees then alleged that they delivered to appellant 585 crates of strawberries in good condition, which appellant received and agreed to transport from Alma, Arkansas, to Kansas City, Missouri, in consideration of the sum of $107.36 and appellees alleged that in consideration of the further sum of $50 appellant agreed and undertook to keep the car in which the strawberries were loaded sufficiently iced to keep it at a temperature sufficiently cold to preserve and keep said strawberries in a merchantable condition, so that they would be marketable in Kansas City, Mo. Appellees then alleged that the strawberries would have netted them, after paying all expenses for transportation, icing, and commissions for selling, the sum of $1,158.89 if same had reached Kansas City in merchantable condition. Appellees allege that appellant neglected, failed and refused to keep said car iced as it agreed to do, and that by reason of its failure the strawberries became overheated in the car, and thereby became soft, mushy, mouldy and unmarketable in Kansas City, Mo.; that they netted appellees $369.35 in their unsalable condition, and that appellees were damaged by reason of the negligence and carelessness as aforesaid $789, for which sum they asked judgment.

Appellant denied all the material allegations of the complaint, and set up the defense of contributory negligence in shipping berries unfit for shipment, and in not discovering defective condition of car in respect to drain pipes, if it was defective, and

in not diligently placing berries on market after their arrival at Kansas City.

The defense of contributory negligence, however, is not urged here. The bill of lading evidencing the contract of shipment was attached to the complaint as an exhibit. It contained the following:

"And it is further especially understood that, for all loss or damage occurring in the transit of said property, the legal remedy shall be against the particular carrier only in whose custody the said property may actually be at the time of the happening thereof—it being understood that the St. Louis, Iron Mountain & Southern Railway Company's leased, operated and independent lines, in receiving the said property to be forwarded as aforesaid, assumes no other responsibility for its safety or safe carriage than may be incurred on its own road."

The bill of lading also recited that the strawberries were received to be forwarded to Kansas City, Mo. Across the face of the bill of lading were written the words and figures: "Refrigerator $50." The bill of lading was issued to T. W. Renfroe, one of the appellees, at Alma. Arkansas. by the agent of appellant.

Appellees adduced evidence tending to prove that on the 27th of April, 1905, an A. R. T. car on appellant's road at Alma, Ark., was loaded with strawberries for Renfroe, the shipper, who sold same to the other appellees. Jones and Taylor. while in transit. The strawberries were in good, merchantable condition when loaded, and were properly loaded. It was a hot day when the car was loaded. The car left Alma little before sundown on the 27th of April. It had remained at Alma from about 3:30 o'clock P. M. the day previous. The car was sealed under the directions of appellant's agent at Alma. While the berries were being loaded. it was noticed that the water was running out of the corners of the car. Witnesses testified that the water was passing out of the car all the afternoon; that it ran out in a stream; that the car was not cold on the inside. It was shown that the car left Alma at 6:23 o'clock P. M., and arrived at Van Buren 7:06 P. M., and left Van Buren at 11:20 P. M. for Kansas City on April 27, 1905. The car was re-iced at Van Buren, but not until it had stood for nearly three hours. When the car was inspected at Kansas City at about 6 P. M. April 28, 1905,

the interior was found to be extremely warm. The berries were soft and beginning to mould. None of them were in merchantable condition. The temperature in the car was about 65 or 75 degrees. If the car had been kept well iced all the time, the berries would have arrived in Kansas City in good condition.

James A. Shibley, a witness for the appellant, testified that he was working for the American Refrigerator Transit Company; that he had no connection with the Iron Mountain Railway Company; that the icing of the A. R. T. Company's cars was a duty which devolved upon the A. R. T. Co.; that he superintended the icing of the car complained of in this suit; that the car was iced before it left Van Buren to be loaded at Alma, and that, after being loaded at Alma, it was returned to Van Buren and re-iced at that point before starting on its journey northward; that he examined the car and found it in good condition; that the bills for icing were rendered to the A. R. T. Co., whose duty it was to attend to the icing of the car and to turning it over to the railway company for use; that he made his reports formally to the general office of the A. R. T. Co., at Tyler, Texas; that when strawberries are loaded into a refrigerator car they have the effect at first of running up the temperature of the car; that when a refrigerator car is in proper condition, and berries are being loaded into the car, and the temperature runs up, ice will melt rapidly, and will run out through the flow pipes at the corners of the car.

The appellant at the close of the evidence asked the court to direct a verdict in its favor, which request the court refused. Appellant then asked the court to instruct the jury as follows:

"1. You are instructed that the defendant assumed no authority to keep the berries iced and in good cars north of Coffeyville, Kansas.

"2. You are instructed that, if the defendant delivered to a connecting carrier the car of strawberries, the defendant meanwhile having used reasonable care to move the berries promptly and to preserve them, and the connecting carrier received the berries for shipment, then the same duty rested upon the connecting carrier to move the fruit and re-ice it as originally rested upon the original carrier, and, if the connecting carrier failed to ice such car, and the result was the damage

of the fruit, and the plaintiffs were injured, then the plaintiffs can not recover."

All these requests were refused, and appellant duly excepted.

The court, on its own motion, gave several instructions, and in substance told the jury that it was the duty of appellant to furnish suitable cars for the shipment of the berries, and that, if the weather conditions required that the cars should be iced in order to preserve the berries during the shipment, then it was the duty of appellant to furnish cars capable of being iced, and to exercise reasonable care to ice the car so as to preserve the berries from decay. If appellant failed to comply with its duty, and appellees were damaged as the proximate result of such failure, appellant was liable. But if appellant performed its duty, and a connecting carrier failed to discharge its duty, and damage resulted from the failure of the connecting carrier, and not from the failure of the appellant as initial carrier to discharge its duty as defined by the court, then appellant was not liable.

Appellant does not urge objection to any particular instruction given by the court on its own motion, but contends that the instructions given, as a whole, presented the case to the jury on an erroneous theory.

The verdict and judgment were for $599.50. All exceptions reserved at trial are preserved in assignments, of error in motion for new trial, which was overruled, and this appeal followed.

*Oscar L. Miles,* for appellant.

1. There is no complaint here of delay in transportation, nor of furnishing a defective car. The charge is that appellant failed to keep the car sufficiently iced in transit. This duty devolved upon the American Refrigerator Transit Company, an independent contractor, and the dereliction in this respect, if any, was a breach of the independent contractor. 53 Ark. 505.

2. Where damage occurs to freight shipped over the lines of connecting carriers, the delivering carrier, in the absence of proof to the contrary, is held to have committed whatever injury the freight has suffered in transit, and the burden of proof rests upon the delivering carrier to show that the injury did not

occur on its line of road.   73 Ark. 114; 72 Ark. 502; 76 Ark. 589; 74 Ark. 597.

*Sam R. Chew,* for appellees.

1.   The contract was with appellant alone, and the refrigerator company was not known in it.   Aside from any express contract to ice the car and keep it iced, it was the duty of appellant, when it received and undertook to transport perishable goods, to furnish suitable cars for that purpose.   If refrigeration was necessary to preserve the goods being shipped, then it was its duty to furnish the refrigeration and a car suitable for that purpose.   7 L. R. A. 280; 63 Ia. 611; 31 Me. 228; 17 Mich. 427; 3 Cal. 280; 79 Ia. 527.   The carrier must, during the transit, use all diligence and care that cautious and prudent men in like business usually employ for the safety and preservation of the property.   3 Wood, Railway Law, § 429.

2.   There is no proof that appellant did not own the car; but, whether it did or not, if appellant furnished it, it was appellant's car so far as this suit is concerned. .49 L. R. A. 462; 18 S. W. 266; 159 Ill. 53; 74 Ark. 597.

WOOD, J., (after stating the facts.)   The contract of shipment, as evidenced by the bill of lading, was entered into between appellant and appellee.   It was for through shipment over appellant's line and connecting carriers from Alma, Ark., to Kansas City, Mo.   Appellant having accepted the berries for through transportation, it was its duty to furnish cars suitable for the purpose.   Strawberries were perishable goods, and, appellant having undertaken to transport them to market, it was its duty to furnish cars especially adapted to the preservation of such goods during the time required for their transition from the place of shipment to the place of destination under the contract.

"If," says Mr. Hutchinson, "the goods are of such a nature as to require for their protection some other kind of car than that required for ordinary goods, and cars adapted to the necessity are known and in customary use by carriers, it is the duty of the carrier, where he accepts the goods, to provide such cars for their carriage.   Hutch. Car. (3d Ed.), § § 505, 508; *Beard*

v. *Ill. Cent. Ry. Co.,* 79 Ia. 518; *Chicago & A. Rd. Co.* v. *Davis,* 159 Ill. 53; *St. Louis, I. M. & S. Ry. Co.* v. *Marshall,* 74 Ark. 597.

It is the contention of appellant that it discharged its duty to appellees when it furnished a refrigerator car, and that the duty of icing the car, under the evidence, devolved upon the American Refrigerator Transit Company, the owner of the car. The contention is unsound, as shown in *New York, Philadelphia & Norfolk R. Co.* v. *Cromwell,* 49 L. R. A. 462. That was a case that involved the transportation of strawberries. The court said: "The California Fruit Transportation Company, for a consideration, furnished its cars to the plaintiff in error [the railway company.] These cars were agencies or means employed by the plaintiff in error for carrying on its business and performing its duty to the public as a common carrier, one of which was to provide suitable cars for the safe and expeditious carriage and preservation of the freight it undertook to carry. A railway company can not escape responsibility for its failure to provide cars reasonably fit for the conveyance of the particular class of goods it undertakes to carry by alleging that the cars used for the purposes of its own transit were the property of another. The undertaking of the plaintiff in error [railway company] was to properly care for and safely carry the fruit of the defendant in error, and it is immaterial that the cars in which it was carried were owned by the California Fruit Transportation Company, or that such company undertook to ice said cars or to pay for the ice. As between the plaintiff in error and defendant in error, the California Fruit Transportation Company and its employees were the agents of the plaintiff in error. So far as the defendant in error was concerned, the plaintiff in error was under the same obligations to care for the fruit that it would have been had the refrigerator cars belonged to it."

It matters not in the case at bar that the refrigerator car belonged to the American Refrigerator Transit Company, an independent contractor. Appellees had no contract with it to furnish cars or to ice them when furnished. Their contract was with appellant to furnish suitable cars; and the evidence was ample to support the verdict, that appellant not only undertook

to furnish the car, but also to ice the same. Even if the law did not impose this upon appellant as a duty, the proof shows that it undertook, for a valuable consideration, to furnish refrigeration as well as the car. The sum of $50 was charged and paid for that service to appellant.

The evidence was sufficient to warrant the jury in finding that appellant negligently failed to perform this service, that it failed to carry out its contract to ice the car and thus to furnish a suitable car.

True, in the case of connecting carriers the presumption is that the delivering carrier caused the injury. *Kansas City S. Ry. Co.* v. *Embry,* 76 Ark. 589; *St. Louis, I. M. & S. Ry. Co.* v. *Marshall, supra; St. Louis, I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 114; *St. Louis S. W. Ry. Co.* v. *Birdwell,* 72 Ark. 502. But this presumption only obtains in the absence of proof locating the negligent carrier. Here the evidence warranted the jury in finding that appellant was negligent in failing to use ordinary care to see that the car was kept properly iced at Van Buren before it started for Kansas City.

Finding no error, the judgment is affirmed.