BLATCHER   *v.*   PHILADELPHIA, BALTIMORE, & WASHINGTON RAILROAD COMPANY.

---

CARRIERS; CONTRACTS; NEGLIGENCE.

1. Provisions in a contract between a carrier and shipper of live stock, who is to accompany the shipment, whereby the carrier exempts itself from liability for injury to the shipper or to the live stock, resulting from its negligence or the negligence of its servants, are

Vol. XXXI.—25.

void; and a provision in such a contract requiring the shipper to inspect the car containing the shipment is against the policy of the law.

2. Where a shipper receives an injury beyond the line of the initial carrier, caused by a defective appliance on the car, even though the connecting carrier is charged with the duty of inspecting the car, its failure to do so will not relieve the initial carrier from responsibility for negligence in assigning the shipper a defective car.

3. Where a shipper of live stock, who accompanied the shipment, after leaving the car for the purpose of watering the stock, at a station where the car was not stopped opposite a platform, in attempting to board the car, the floor of which was about 5 feet from the ground, grasped a hasp on the side of the car door which was the only thing to catch hold of, and the hasp gave way and he fell to the ground and was injured, and there is evidence of prior similar use by the plaintiff and railroad employees of hasps so located, the trial court, in an action by the shipper against the railroad company to recover for his injuries, commits error in directing a verdict for the defendant. (Distinguishing *McCauley* v. *Southern R. Co.* 10 App. D. C. 560.) Mr. Justice Van Orsdel dissenting.

No. 1843.   Submitted April 14, 1908.   Decided May 5, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict for the defendant, directed by the court, in an action to recover damages for personal injuries.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decision of the supreme court of the District directing a verdict for the defendant below, the Philadelphia, Baltimore, & Washington Railroad Company.

The plaintiff, William Blatcher, entered into a contract with the defendant railroad company to transport certain horses and vehicles with plaintiff in charge from Washington to destination if on said carrier's road, and, if not, to the connecting carrier. Said contract required the shipper to inspect the body of the car used, and absolved the carrier from all liability on account of loss or injury to stock occasioned by the de-

fective condition of such part of the car. It also exempted the carrier from all liability for injuries to plaintiff resulting from negligence or otherwise.

The destination of the plaintiff was Newport, Rhode Island, a place beyond the terminus of defendant's road. The defendant company furnished plaintiff a car for the entire trip, and, when the train to which this car was attached stopped at Taunton, Massachusetts, beyond the terminus of the defendant's road, plaintiff, pursuant to the terms of his contract, alighted from the car to obtain water for his horses. Under said contract, it was not incumbent upon the defendant or connecting carriers to stop said car opposite a platform, nor did it so stop on this occasion, the evidence showing that at the point where the car stopped it was at least 5 feet from the floor of the car to the ground. In attempting to re-enter the car, there being no other means provided, the plaintiff grasped an iron hasp about 10 inches long and 3 inches wide, which hung from the side of the door of the car and which was attached thereto by a bolt which passed through the framework of the door and on the end of which was a thread for a screw. This hasp was designed primarily for use in fastening the door, and was like the ordinary door hasp except that it was somewhat larger and stronger. As the plaintiff was in the act of drawing himself into the car, the bolt which held the hasp pulled out, and the plaintiff was projected onto an adjoining track and injured. He testified that he examined the hasp and bolt after the accident, and found that "the thread at the end of the bolt had no nut on it and was rusty all along; that he had traveled frequently with stock on cars similar to this one, and had gotten on the cars in the same manner that he did on this occasion; that there was nothing but this hasp to catch hold of, and that he could not get into the car without catching hold of something."

*Mr. M. F. Mangan* and *Mr. James B. Horigan* for the appellant.

*Mr. Frederic D. McKenney, Mr. John S. Flannery, Mr. William Hitz,* and *Mr. D. Bowdoin Craighill* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The plaintiff was a passenger for hire, and the attempt on the part of the carrier to exempt itself from responsibility for its own negligence, or the negligence of its servants, is neither just nor reasonable, and, therefore, void. *New York C. R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. ed. 627; *Baltimore & O. S. W. R. Co.* v. *Voigt,* 176 U. S. 505, 44 L. ed. 564, 20 Sup. Ct. Rep. 385.

The accident causing the injury having occurred beyond the terminus of defendant's road, can the defendant in any event be charged with responsibility? There can be no question that it was the duty of the carrier to furnish plaintiff a car properly equipped and in proper condition for the trip and for the particular service contemplated. And it is against the policy of the law to permit a common carrier to evade this plain duty by attempting to make a car inspector of the shipper, who may know nothing about cars or their equipment. *St. Louis, I. M. & S. R. Co.* v. *Marshall,* 74 Ark. 597, 86 S. W. 802; *Leonard* v. *Whitcomb,* 95 Wis. 646, 70 N. W. 817; 6 Cyc. Law & Proc. p. 441.

It is contended that the initial road in this case did not meet that responsibility because of the defective condition of said door hasp when the car was assigned plaintiff. Assuming that this hasp was out of repair and defective at the time the car was assigned plaintiff, which, of course, was a question for the jury, and that, in the absence of any other means of assistance, plaintiff was justified in using the hasp in attempting to enter the car, the defendant's negligence was primarily responsible for the accident. In *Indianapolis, B. & W. R. Co.* v. *Strain,* 81 Ill. 504, the initial carrier was held responsible for the loss of stock beyond the terminus of its line because of a defect in the car which was present when it was assigned for the trip, notwithstanding a clause in the contract of

shipment exempting the carrier from liability for such loss beyond its own line. The court stated that it was the duty of the company to furnish good and sufficient cars for the service contemplated; that "this they did not do, and thence the loss. For this neglect of duty, we are of opinion the railroad company is responsible." Also see *Moon* v. *Northern P. R. Co.* 46 Minn. 106, 24 Am. St. Rep. 194, 48 N. W. 679.

Even though the connecting carrier was charged with the duty of inspecting this car, we are of opinion that its failure to do so does not relieve the defendant company from responsibility for its negligence in assigning plaintiff a car with a defective appliance, since the injury was the result of that defect. "The most that can be claimed from the omission of the proper inspection by the Lake Shore Company [the connecting carrier] is that it failed to cure or remedy the previous negligence of the plaintiff in error [the initial carrier], and thereby interrupt the consequences which were likely to and did flow from it. That failure cannot with propriety be said to have broken the connection between the negligence of the plaintiff in error and the injury resulting from the use of the defective car, or to have been the self-operating cause of the injury." *Pennsylvania R. Co.* v. *Snyder,* 55 Ohio St. 360, 60 Am. St. Rep. 700, 45 N. E. 559.

This brings us to the question whether the plaintiff was justified in using the hasp in attempting to re-enter the car. His testimony, which is uncontradicted, shows that it was fully 5 feet from the ground to the floor of the car; "that there was nothing but this hasp to catch hold of; and that he could not get into the car without catching hold of something." The defendant was chargeable with knowledge of such a situation because, under the terms of its contract with the plaintiff, neither it nor any connecting carrier was required to stop the car opposite platforms. Under the contract, plaintiff was required to leave the car when it stopped on the occasion of the accident for the purpose of obtaining water for his horses. Having left the car, it was, of course, necessary for him to re-enter it. He says he could not do so without catching hold

of this hasp. He further says that he has frequently traveled with stock on cars similar to this one, and has gotten on the car as he attempted to do on this occasion. He also offered to show that he had seen railroad men and others use such hasps in getting into similar cars. We think the jury should have determined whether, in the circumstances, notwithstanding this hasp was primarily intended for another purpose, plaintiff was justified in the use he attempted to make of it. The size and strength of the hasp, its location on the framework of the door where it could be grasped conveniently by anyone attempting to enter, the absence of any other means of assistance in entering the car, the necessity for such means, and the evidence relating to the prior similar use by the plaintiff and railroad employees, were all facts to be taken into consideration by the jury in determining whether the plaintiff was guilty of contributory negligence,—whether the defendant company did not really intend the hasp to be so used.

Counsel for appellee rely upon the case of *McCauley* v. *Southern R. Co.* 10 App. D. C. 560. The facts in that case differ materially from the facts in this. McCauley was an employee of the railway company, and not a passenger. It was his duty as fireman to set flags on either side of the front of the engine, which had a footboard and hand rail on each side extending to the front flagstaff socket. There was no hand rail in front over the pilot and never had been on that style of engine. Plaintiff attempted to pass in front over the pilot for the purpose of removing the flags, and, in so doing, grasped a number plate, the sole function of which was to indicate the number of the engine. The plate came off and the plaintiff was injured. Ample means were provided for the removal of these flags without risk of injury. The plaintiff knew there was no hand rail in front of the engine, and knew, or should have known, that the number plate was unfit and not designed or intended for the use he made of it. The court found that, inasmuch as it was "clear that ample means had been provided on each side of the engine for the convenient and safe removal of the front flags," which tended "strongly to show that

the use of the number plate as a support in the removal of the flags could not have been in the contemplation of the defendant," it was incumbent upon the plaintiff to show "by some evidence that his use of the number plate as a support in the performance of his duty was at least within the knowledge of the defendant."

In the present case no means were provided other than this hasp to enable the plaintiff to re-enter the car when he left it in the performance of his duty under his contract with the defendant. The jury, from the evidence, might reasonably have inferred that no other means were provided by the defendant, because this hasp, if in proper condition, would have served the purpose as well as any other device. Of course, when the hasp was being used for the purpose for which it was primarily intended, the door was closed and a device for assistance in entering not then necessary.

The judgment must be reversed, with costs, and the case remanded with directions to grant a new trial.      *Reversed.*

Mr. Justice VAN ORSDEL dissenting.