CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* LEDBETTER.

Opinion delivered February 10, 1913.

1. CARRIERS—LIABILITY OF DELIVERING CARRIER—DAMAGES TO FREIGHT.— The delivering carrier of freight is not liable for damage to the freight received while in the hands of the initial carrier, and is liable for damages to the freight only while it is in its own

possession, under Act No. 144, page 358, Acts of 1905, as amended by Act No. 166, page 401, Acts of 1907.   (Page 516.)

2. APPEAL AND ERROR—INSTRUCTIONS.—The refusal of the trial court to give an instruction asked by defendant is not prejudicial to defendant, when in response to special interrogatories submitted by the court the jury found according to the terms of the refused instruction.   (Page 517.)

Appeal from Logan Circuit Court, Southern District; *Jeptha H. Evans,* Judge; modified and affirmed.

*Thos. S. Buzbee* and *George B. Pugh,* for appellants.

The effect of the Act of 1905 is not, as held by the lower court, to make the delivering carrier liable for damages to shipments caused by the negligence of the initial carrier, but is merely declaratory of the common carrier law as announced by this Court, namely: that the delivering carrier is *prima facie* liable; but this presumption of liability may be overcome by proof.   Compare above with Act No. 240, approved May 6, 1907. 72 Ark. 502; Kirby's Dig., § 6773; 33 Ark. 816; 36 Ark. 41; *Id.* 451; 53 Ark. 96; 57 Ark. 136; 59 Ark. 140; 99 Ark. 226.

*J. O. Kincannon,* for appellees.

1. The question whether or not there was any damage to the shipment through the negligence of appellant and the connecting carrier, is one of fact which is settled by the verdict of the jury.

2. The court was right in charging the jury that the defendant was liable as delivering carrier for all damages occasioned by the negligence of the connecting carrier.   Act No. 144, approved April 5, 1905.

McCULLOCH, C. J.   This action was instituted by the plaintiffs against the Chicago, Rock Island & Pacific Railway Company to recover damages sustained on shipments of live stock from Prescott, Arkansas, to Booneville, Arkansas.   The cars were billed through from Prescott to Booneville, over the line of the St. Louis, Iron Mountain & Southern Railway Company from Prescott to Argenta, and thence over defendant's line to Booneville.   Some of the cattle were found dead in the

cars at Argenta and were taken out before delivery of the cars to defendant. Others were in damaged condition at that time, and the jury found that further damage was done to the stock while en route to destination. The jury, under instructions, made special findings to the effect that damage to the extent of $54.00 was done to the stock actually delivered to defendant while on the line of the St. Louis, Iron Mountain & Southern Railway Company, and that damage was done to the extent of the sum of $235.50 while on defendant's line. The court rendered judgment against defendant for the two amounts.

The evidence was sufficient to sustain the finding of the jury and the question of the correctness of the judgment for damage which occurred on defendant's line may, therefore, be dismissed from further discussion.

The remaining question is one of law whether or not, under the statutes of this State, the defendant, as the delivering carrier, is liable for the damage done on the line of the initial carrier.

The shipments were intrastate ones and were, therefore controlled by our statutes.

The statute relied on to sustain the recovery is the Act of April 5, 1905, which reads in part as follows:

"SECTION 1.    All railway companies, their assignees or lessees, and all other common carriers who receive goods for shipment at points within this State, to be delivered at other points within this State, and all railway companies and other common carriers, their assignees or lessees, who deliver goods, wares and merchandise to persons at points within this State, are hereby made liable for all damages to said goods, wares and merchandise, to the consignee or his legal representative.

"SECTION 2.    All damages to goods, wares and merchandise, not exceeding ten ($10.00) dollars, may be collected from the agent at the point of destination; *provided,* the consignee or his legal representative shall present to the agent of the railway company or other com-

mon carriers an itemized statement, giving a clear description of the property damaged, and the amount of damage to each item or articles so damaged, verified by affidavit within three days· from the time said goods are received.

"SECTION 3.   If, after the consignee shall have made out and presented his itemized statement, as required by section 2 of this Act, the railway company, or other common carrier, or its agent, at the point of destination, shall fail. or refuse to pay such claim or claims for loss or damage, where the amount does not exceed ten ($10.00) dollars, then the consignee of said goods, wares and merchandise so damaged may enter suit against said railway company or common carrier, their assignees or lessees, for his loss or damage, and if he recover in said action against said railway company, its assignees or lessees, the court or jury trying such cause shall render a judgment and verdict for treble the amount of the claim for his damages or loss."

This was amended by Act of April 11, 1907, by striking out the amount specified in sections 2 and 3, so as to make the statute applicable to claims for damages in any sum.

It is contended that the statute makes the delivering carrier liable for all damages, whether done on its own line or that of the initial carrier.   The trial court so decided.   The language of the first section of the Act, standing alone, undoubtedly tends, in some measure, to sustain that contention; but our conclusion is, that such is not the proper construction to place on it.   The fact that the statute does not provide a remedy in favor of the delivering carrier over against the initial carrier, as does another statute, to which we will presently call attention, with respect to the remedy of the initial carrier against the connecting carrier, and as does the Act of Congress on the same subject, tends strongly to rebut that construction.   The words, "are hereby made liable for all damages," are susceptible to the construction that it means that each carrier shall be liable for all damage

occurring on its line. Otherwise, why should the initial carrier be mentioned at all? No remedy is conferred against the initial carrier in the succeeding sections, and it is manifest that the purpose of the Act was to expedite speedy settlement of claims, and not to fix liability. It constitutes, also, a recognition of the common law presumption of liability on the part of the delivering carrier, which may be overcome by proof. *St. L. S. W. Ry. Co.* v. *Birdwell,* 72 Ark. 502; *St. L., I. M. & S. Ry. Co.* v. *Coolridge,* 73 Ark. 112; *St. L., I. M. & S. Ry. Co.* v. *Marshall,* 74 Ark. 597.

The third section of the Act, it will be observed, does not declare liability of the delivering carrier, but only provides for the assessment of treble damages if such carrier shall fail to pay and the claimant shall "recover in said action." Under the provision of the Act there is a *prima facie* presumption of liability on the part of the delivering carrier for the whole of the damage. The claimant is authorized to present his claim for it to such carrier, and if he recovers the amount of his claim the courts render judgment for treble the amount.

We are not passing on the question of the validity of the statute but merely interpreting its meaning.

The General Assembly of 1907 enacted another statute (approved May 6, 1907) making the initial carrier liable for all damages sustained through negligence while on its line as well as on other lines over which the consignment passes. It gives a remedy to the initial carrier over against the carrier through whose negligence the damages were sustained. This statute was enacted at the same session during which the other amendatory statute was passed, and may be regarded as legislative determination that the other statute did not make the initial carrier liable for all damages.

It is contended by counsel for defendant that the judgment for the damages found to have occurred on its own line should be reversed on account of the court's refusal to give an instruction that, if the jury found that when defendant received the cattle from the other car-

rier at Argenta, they were in a damaged condition and that "the condition they were in at Booneville was the natural result of handling them in the condition they were in when received" at Argenta, the verdict should be in favor of defendant.

If this instruction be conceded to be a correct declaration of the law, defendant was not prejudiced by the court's refusal to give it. The court submitted the case to the jury on the following special interrogatories:

1. Was there any damage done the shipments by the negligence of the defendant?

2. If so, how much?

3. Was there any damage done by the negligence of the Iron Mountain to the shipments received by the defendant for delivery here?

4. If so, how much?

The jury answered the first and third interrogatories in the affirmative and fixed the damages under the second interrogatory at $235.50 and under the fourth at $54.00. Under the first and second interrogatories the jury necessarily found that the amount of damages named was sustained on account of negligence of the defendant, therefore its liability is fixed under the law.

The judgment will be modified so as to strike out the recovery of the sum of $54.00 for damages which occurred on the line of the initial carrier. In other respects the judgment will be affirmed. It is so ordered.

HART and KIRBY, J. J., dissent.